## William O. Tolman

*v.*

## Augustus Race.

1. Boundary lines — *when evidence conflicts, verdict must stand.* In a question of boundary lines of a tract of land, where the evidence is conflicting, the verdict of the jury will not be disturbed.

2. Where there are no improper rulings of the court, and not always then, this court will not disturb a verdict in such a case on the facts alone, unless the finding is clearly wrong.

3. Such testimony will be weighed by the jury. Conflicting testimony will be weighed by the jury, and unless some gross wrong is perpetrated by them, their verdict will not be set aside.

4. Lost corner of government survey. When the corner of a quarter section, established by the government survey, was readily ascertained by the surveyor who conducted a survey from it, twenty-five years before any controversy arose, and who testified that the fence was on the line it then occupied, at that corner, makes a strong case on which to found a verdict, in favor of the party claiming the corner and the line extended from it.

Appeal from the Circuit Court of Greene county; the Hon. D. M. Woodson, Judge, presiding.

This was an ejectment for four and seventy-seven one hundredths acres on west side of south-east quarter of Section 31, Town 9 north, Range 11, in said county. Pleas, not guilty, and not in possession of the premises.

The evidence in behalf of the plaintiff was as follows:

*Richards* testified, that he aided, twenty-five years since, in survey of land, to ascertain corner in question. That surveyor found mound corner at corner of fence where it is now. That fence was changed in part — not at the south but at the north

end of it — and that it is now on line according to original corner.

*Tolman* testified, that defendant was in possession of the four and seventy-seven one hundreths acres of land sued for in this case at the time of service of declaration. That witness was acquainted with premises for more than twenty years; were enclosed by fence on west side, running north a considerable distance till nearly opposite a barn, thence east four or five rods, thence north to the north boundary of the quarter section, by a post and rail fence that was built by a man who, about same time, built some like fence for witness, and that fence, some years since, had been altered by removing greater part of it, so as to be on a line with the post and rail fence.

*Routt* and *McPherson* testified, that they had been surveyors of Morgan county for many years, and that they were acquainted with rules, regulations and usages of surveying. That according to these, if south half of section thirty-one had a surplus of ten acres over quantities patented to the proprietors of the south-east and south-west quarters, and the half-mile corner between the two quarter sections was lost, the surplus would be divided between the proprietors in fellowship proportions.

*Griswold,* a son of the patentee of the south-east quarter, who settled and improved the same, testified as follows : Was about thirteen years old when land was enclosed ; helped to build fence ; supposed it was built on west side of the tract ; rocks, to support corners of fence, intended to be put upon the line till it came to jog. Land was surveyed, but did not recollect by whom. Fence supposed to be put on line. Fence has been moved east from where it was first built four or five rods. Had recently examined ground, and found rocks still along about where fence was first built. Jog in fence running north, for convenient access to lane. Forty-six years old. Jog in fence was not quite one-fourth of mile from north line. From jog south the change had been made, fence on north remaining as it was.

*Eldred* testified as follows : Was owner of south-east quarter in 1849 and 1850. While absent in California, without

30 — 36 ILL.

his knowledge or consent, the fence on west boundary, running north and south, was partly removed four or five rods east. Was lately upon land, and found stones and trees that had grown in fence row as it was originally.

*Ozburn* testified as follows: Assisted Hatfield, who was tenant of Eldred while in California, to move fence on west side. Longstreet was adjoining proprietor on west, who had moved his part before witness assisted Hatfield. Fence was built on what Longstreeet claimed to be line. Fence has remained ever since as it was moved.

*Brace* testified, that he was agent for Eldred while in California. Was repeatedly on premises while acting as such agent, and that until change in fence on west side, the fence ran as testified by Tolman.

Plaintiff, by production of patent, proved that south-east quarter was patented to Griswold for 160 acres, and that by a series of deeds before suit was brought, plaintiff had fee simple title to same.

By agreement of counsel, instructions of government as to modes of surveying to be regarded as part of the bill of exceptions.

*Foster* testified as follows: Had been practical surveyor for seven or eight years, and surveyor of Jersey county for two or three years. According to his understanding of instructions of government, where there is a *plus* or *minus* in adjoining tracts of land, and the original corner cannot be found, the lands are to be divided between adjoining proprietors according to the amounts as shown on government plats as belonging to each piece, in fellowship proportions. Had chained south side of section; surplus of ten acres in south half of it, over the quantities specified in government plats. That plaintiff had in his enclosure only 159½ acres, and that according to his estimate, on fellowship proportions, the south-east quarter contained $164\frac{77}{100}$ acres. In running line above stated, he started from a corner that he was told, by men in neighborhood, was original south-east corner of quarter section. Never tested its truth by running any other line. Did n't know it was true corner, only

from information from others.    Witness had his attention called to a particular rule in the instructions, and said he knew nothing about that rule, and did not adopt it.    Plaintiff rested.

The evidence in behalf of defendant was substantially as follows:

He proved that at time suit was brought, he had fee simple title to east and west halves of south-west quarter section thirty-one, nine, eleven, each estimated at eighty-eight and fourteen one-hundredths acres.

One *Vigus* purchased east half in 1839.    In 1842 had it surveyed by Dodge, who commenced his survey at a point north of Kane, running south, then east, for which reason witness doubted the correctness of the survey.    Land not then enclosed, and the line as surveyed ended two, three, or four rods east of Griswold's south-west corner, as then enclosed.    Witness went to see him at his house, near north-west corner of south-east quarter of thirty-one, nine, eleven.    He said to witness, he did not care anything about it.    Witness proposed to him, if he was not satisfied with Dodge's survey, that they would get another man to run it, and establish the true line.    Griswold said he did not care anything about it, and would not pay a cent to have it surveyed; that he had all his land, and was satisfied. At the time of the conversation, there was an unplowed and unbroken strip of land in his enclosure, on west side, to about where Dodge's survey had established the quarter section corner.    Griswold did not say that he would n't claim up to his fence, but witness understood him to be satisfied with Dodge's survey, and that said strip was not claimed by him.

*Enslow,* lived near land in controversy since 1831.    He and his brother, intending to enter west half south-west quarter thirty-one, nine, eleven, about that time, called on Griswold, who was owner of south-east quarter of same section, to get him to point out corner.    He pointed out corner at centre of section, then on east bank of a branch running in a southerly direction.    Thinks corner now would be in branch, having been washed out on east side.    Griswold had built fence at the time four or five rods west of this corner, at the north end of

line. The fence ran a little east of south, and Griswold said, pointing to the south end of it, that it would run out at the quarter section corner; that that was his line; that he had his 160 acres east of the line, and he would have no more nor less. Witness did not follow fence down to see if did run to the original corner. Had often seen ground in controversy. A true due south line from the corner pointed out by Griswold as the corner of the centre of said section, would run west of the post and rail fence, and east of the fence made by rails.

*Collins,* was surveyor of Greene county twenty-five years since. Had surveyed from corner in controversy while surveyor. Remembers seeing original mound at quarter-section corner on south line thirty-one, nine, eleven, but cannot tell particularly about it; was near corner of the fence; cannot state whether fence stands now as it did then. Surplus of near nine acres in south half of the section, over amount called for in patents. South-east quarter calls for 160 acres, and east half and west half of south-west quarter each calls for eighty-eight and fourteen one-hundredths acres. Understood rule of surveying to be to conform as near as possible to the government surveys; that if he wished to ascertain the true corners and establish them in section thirty-one, he would ascertain the true south-east corner, then run west on south line forty chains, which would make the quarter section corner, and then run to the south-west corner of the quarter section. This would make south-east a regular quarter of 160 acres, and would throw any surplus or deficiency altogether with the south-west quarter. In all his experience as surveyor, had never known any 160 acre tract, but one, to measure exactly 160 acres.

*Sperry,* had long known land in controversy. In 1842, aided in surveying lands in north half section thirty-one, from stone in centre of section. Did n't know who put it there, or when it was put there. Over a line east from that corner, this stone stands fifteen or twenty feet west from post and rail fence mentioned by Mr. Tolman. A line due south from this stone, would cross fence at the jog mentioned, and run a little east of the rail fence on the south part of this fence. Griswold put the

post and rail fence where it now stands in 1842. The stone mentioned stood there then. Here the defendant rested.

This being all the evidence in the case, it was submitted to the jury on instructions at the instance of both parties, and the jury found a verdict for the defendant, which plaintiff moved to set aside as contrary to the law and evidence, and for a new trial in the case; which motion was overruled *pro forma*, and the plaintiff excepted, and assigns for error in this court the overruling of his motion by the court below.

Mr. DAVID A. SMITH, for the Appellant.

Messrs. MORRISON & EPLER, and Mr. J. W. ENGLISH, for the Appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of ejectment in the Greene Circuit Court, and brought here after a verdict and judgment for the defendant, by agreement, on a bill of exceptions.

No question of law is presented in the case, the only error assigned being the refusal of the court to set aside the verdict and grant a new trial.

The question presented on the trial below, was one of boundary between adjoining .quarter sections of land, and that depending on the location of a certain corner, on which much testimony was given on both sides. It was somewhat conflicting in its nature, as it ever will be in cases of this kind. It is the peculiar province of a jury to weigh evidence, and reconcile it, if possible; or if that cannot be done, then to decide according to the weight of the evidence, as it may appear to them. They have so done in this case, and we cannot say their verdict is so manifestly against the evidence as to justify this court in setting it aside. Where there are no improper rulings, and not always then, this court will not disturb a verdict on the facts alone, unless the finding is clearly wrong. *French* v. *Lowry*, 19 Ill. 158.

There is evidence to support this verdict, and of strong char-acter, and we have said, in such case we will not disturb it, unless it is manifestly against its weight. *Bush* v. *Kindred,* 20 Ill. 93. This we cannot say in this case.

We have also said that conflicting testimony is to be weighed by the jury, and unless some gross wrong is perpetrated by the jury, the verdict will not be disturbed. *Carpenter* v. *Ambroson,* 20 Ill. 170 ; and again in *Goodell* 'v. *Woodruff,* 20 Ill. 191, unless a verdict is manifestly against the weight of evidence, it will not be disturbed. Numerous other cases to the same effect might be cited.

The south-west corner of the south-east quarter of thirty-one, was not lost, as was proved by several witnesses, and it was established, where it now is, by the positive testimony of G. C. Richards, who assisted in surveying the quarter, to ascertain this very corner, twenty-five years ago, and who states that the original fence on the west side has not been moved further east at the south end of the line.

The corner not being lost, the appellant's doctrine, of division by fellowship proportion, where there is a surplus, can have no application.

The judgment must be affirmed. *Judgment affirmed.*