Thompson Stickle

*v.*

Moses Otto.

1. Evidence — *books of account* — *ledger*. When a party's day-book is admitted in evidence after his testifying to the correctness of the various entries therein, there is no error in refusing to allow him to give in evidence his ledger, which he testifies is a correct transcript of his day-book.

2. Error will not always reverse — *improper instructions*. Although one or more of the instructions given may be obnoxious to objection, yet, if taking them all together as a whole the jury could not have been misled, the judgment will not be reversed

3. New trial — *finding when evidence is conflicting*. Where the evidence is conflicting as to questions of fact, this court will not grant a new trial except

11 — 86th Ill.

where it is clear, taking into consideration the superior advantage possessed by the jury from seeing the witnesses and hearing them testify, that the jury, either through prejudice, passion, or mistake, have erred.

APPEAL from the City Court of Aurora; the Hon. FRANK M. ANNIS, Judge, presiding.

Messrs. BROWN & SOUTHWORTH, for the appellant.

Mr. A. J. HOPKINS, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

The present appeal is prosecuted to reverse a judgment recovered by Otto against Stickle, in an action of *assumpsit* for work and labor, for $162.

Appellant was a dealer in marble, engaged in setting up monuments, etc.; and, in August, 1873, employed appellee to work for him in his business. Appellee accordingly worked for him, under this engagement, until in March, 1874, when the parties settled their accounts, and appellee was paid by appellant all that was due him at that time. Appellee then ceased to work, or, as the witnesses express it, "laid off," for about a week, when he resumed work, and continued to work for appellant until February, 1875, when he again ceased to work, or "laid off," for about nine days, and then again resumed work, which he continued until in April, 1876. In addition to the labor so performed, appellee charged appellant for the use of a horse for about eleven months, during the time, and also for the use of a double-harness, and also for moneys expended in appellant's business, which it was his duty to repay.

Appellant denied his liability to pay for the use of the horse and harness, and he also denied that appellee had expended any money on his account. He also claimed that when he first employed appellee he agreed only to pay him $30 per month for work in the summer and $15 per month for work in the winter; that when appellee ceased to work,

or "laid off," in March, 1874, and before appellee resumed work, it was agreed appellant should thereafter pay him only $15 per month; and that this agreement was renewed in February, 1875, when he resumed work in that year. He also claimed to have made various payments to appellee, in money, from time to time.

Appellee denied that he agreed to work for $15 per month, except for a short time in the spring of 1874, and claimed that all his other work was to be paid for at the rate of $30 per month.

The evidence on the conflicting claims was contradictory. Among other evidence relied on was that of the books of account of the respective parties.

It appears that appellant, after testifying to the correctness of the entries in his day-books, of the various items of his account against appellee, was permitted to give his day-books in evidence, and that he then proposed to also give in evidence his ledger; but the court, on appellee's objection, refused to permit the ledger to be given in evidence.

Appellant argues that this was error. He says it was competent evidence as a memorandum, even if it was not as a book of accounts, and he cites *Wolcott et al.* v. *Heath*, 78 Ill. 433, in support of his position. All that is held in that, and the other kindred cases cited by him from the New York reports, is, that where a party makes daily entries of transactions in his books, he may refresh his memory therefrom, and it is error to exclude evidence derived from such source.

*Prince* v. *Sweet*, 4 Mass. 569, also cited by appellant, holds simply that, when an account is transferred to a ledger from a day-book, the ledger should be produced, that the other party may have advantage of any items entered therein to his credit.

This case, obviously, has no application. The opposite party does not ask the benefit of the ledger, and the party producing it does not pretend it affords evidence of any item of his account not embraced in the day-books and previously testified to by him.

The items in the ledger are, as appellant testified, correct transcripts from the day-books; and this is all that is claimed for them. His position, then, is, he first testifies to his accounts, refreshing his memory from his day-books, giving item by item, then corroborates this by the day-books themselves; he then, although claiming that this evidence is full and complete as to his accounts, asks to further corroborate it by giving in evidence the ledger. If, as he says, the entries in the ledger are only copies from the day-books, what can the ledger possibly prove that is not already proved by the day-books? If the account in the ledger is accurate, it is only so because it correctly refers to an accurate account in the day-books. We have never yet heard it claimed that evidence of the accuracy of an account is affected by the number of times the account has been transcribed.

It is impossible to conceive how appellant was injured by excluding his ledger.

With regard to the instructions to which objection is urged, we deem it necessary to only say, while some one or more of them, taken singly, is obnoxious to objection, we think, taking the whole together, the jury could not have been misled as to the law.

The real controversy was one of fact. A jury, from their superior advantage in seeing the witnesses and hearing them testify, would, in general, be more apt to have an accurate idea of the relative worth of the evidence of the different witnesses than a court by merely reading a transcript from a bill of exceptions. Much allowance is, therefore, always given in favor of the verdict of a jury on this ground; and only when it is clear, taking such allowance into consideration, that the jury, either through prejudice, passion, or mistake, have erred, is it the duty of an appellate court to set their verdict aside.

We do not, in the present instance, perceive such cause to disturb the verdict.

The judgment is affirmed.

*Judgment affirmed.*