# Charles S. Dole
## v.
## David Clow.

*Action to Recover Damages for Overflowing Lands—Conflict of Evidence —Questions for Jury—Instructions—Pleading.*

1. Where the evidence is conflicting and there is enough to support the finding, this court will not interfere with the verdict on the ground that it is against the evidence. In such a case the court will not attempt nicely to weigh the evidence on each side, and will grant a new trial only when the verdict is manifestly against the evidence.

2. The plaintiff in his declaration must clearly state the nature of the defendant's liability, and must clearly prove that liability as laid.

3. In an action to recover damages for overflowing plaintiff's land, it is *held:* That, although the evidence is conflicting, the proof sustains the declaration; that the questions involved were for the jury, and that the instructions given for the plaintiff properly submitted the controverted questions to the jury.

[Opinion filed December 11, 1886.]

Appeal from the Circuit Court of McHenry County; the Hon. Charles Kellum, Judge, presiding.

Messrs. T. D. Murphey and Paddock & Aldis, for appellant.

The court erred in giving instructions Nos. 3 and 5 for the plaintiff in the court below.

Concerning the natural height of the lake, they are in obvious conflict with the instructions given for the defendant on that subject, and do not give the correct legal rule, and we insist must have misled the jury. By the third instruction the

jury are told to find the defendant guilty if they found from the evidence that by the dam or slash-boards the waters of the lake were raised and elevated above their natural and usual height during the summer months of the year. By the fifth instruction the jury are told, by the court, that they should find the defendant guilty, if from the evidence they found that by his act he had maintained the waters of said lake above their natural and usual height during any summer month during the last four years. This does not naturally or necessarily refer to a raising during the summer months of the lake above its natural and usual height. Such is not the ordinary significance to be derived from language so arranged. But obviously it lays down a different rule as to the rights of the defendant from that laid down in the defendant's instructions, and hence in conflict with it. The fifth instruction so reads as to manifestly limit the height to which the defendant must confine the water to the minimum height in summer, which, as shown by the evidence, is at a low stage of water. At such stage the water did not flow out of the lake through its outlet, and off by the natural stream or water-course leading from it to Fox River. And yet, the defendant, under the law and the defendant's instructions, had the right to leave the lake up and keep it up to the very point where the lake waters would flow out through its natural outlet, and away over his soil.

We claim that the instructions complained of took from the defendant below the exercise of a natural right that belonged to him as a riparian owner; namely, of keeping his banks and consequently the lake at the height which nature fixed, and that the instructions in effect stated that if the water exceeded the level during any of the summer months, when the water was low in the lake, the defendant was liable for any damage resulting therefrom, even though the level at which he kept the lake in these months was not as high as the natural level of the lake when it flowed through its natural outlet and ran away in a well defined channel through the water-course called Crystal Lake outlet. Plumleigh v. Dawson, 1 Gil. 544.

The jury could not correctly decide which set of instructions was correct and which erroneous. That they were in

flat conflict with each other was obvious, and it was error to so instruct the jury, for which, if for no other reason, we respectfully insist the judgment must be reversed. Ill. Linen Co. v. Hough, 91 Ill. 63; Quinn v. Donovan, 85 Ill. 194; Morris v. Gleason, 1 Ill. App. 510; Joliet v. Walker, 7 Ill. App. 267; Ottawa, O. & F. R. R. Co. v. McMath, 4 Ill. App. 356; Sweet v. Leach, 6 Ill. App. 212; Gale v. Rector, 5 Ill. App. 481.

The defendant was a riparian proprietor, and therefore had the legal right to have the water in the lake come to his bank and flow out, as it naturally would at any and all seasons, undiminished in quality and in quantity. Angell on Water Courses, Secs. 100a, 101a and 102; Wood on Nuisances, Sec. 350; 3 Kent's Comm., 537; Plumleigh v. Dawson, 1 Gil. 544; Gould on Waters, Sec. 204; Evans v. Merriweather, 3 Scam. 494.

The defendant was under no legal obligation to lower the lake for the purpose of enabling the plaintiff to drain his land by artificial ditches. The plaintiff has no claim upon any one to lower the water in Crystal Lake by artificial means, to thereby create a receptacle for the waters proceeding from his wet marshy lands through artificial ditches. Peck v. Harrington, 109 Ill. 611; Angell on W. C., Sec. 108; Goodale v. Tuttle, 29 N. Y. 469.

Mr. M. D. Brown, for appellee.

The owner of a servient heritage has no right by embankments or other artificial means, to stop the natural flow of the surface water from the dominant heritage and thus throw it back on the latter. Gormley v. Sanford, 52 Ill. 158; Gillham v. The Madison County R. R. Co., 49 Ill. 484; Tuttle v. Riddle, 26 Pa. 154; Williams v. Sandbeak, 47 Pa. 154; Laney v. Jasper, 39 Ill. 46; Livingston v. McDonald, 21 Iowa, 160.

The plaintiff could maintain his action if his lands were overflowed any season of the year, by a dam raising the water beyond its usual and ordinary height. Marh v. Shultz, 29 N. Y. 346; Gerrish v. New Mfg. Co., 10 Foster (N. H.), 478. These authorities apply to and clearly support the third and fourth instructions given by the appellee.

A man has no right to erect a mill-dam on his own land so as to throw the water back to his neighbor's line in the ordinary stage of the stream, and thus cause his neighbor's land to be overflowed by the natural swelling of the stream at certain seasons of the year.    McCay v. Dunby, 20 Pa. St. 85.    This case also supports the third and fifth instructions.

WELCH, J.   This was an action on the case brought by the appellee against the appellant to recover damages for injuries claimed to have been caused by the damming up by appellant of the outlet of Crystal Lake, and thereby flooding the land of appellee.   The lands of appellee claimed to have been injured comprise about forty-five acres of a farm of about two hundred acres lying and bordering on the north shore of said lake.   This lake is about one and three quarter miles east and west and about three fourths of a mile north and south.   A portion of this farm has a lake shore front on the north of about three quarters of a mile.   This forty-five acres claimed to have been injured is separated from the lake by a ridge of loose sand, gravel and pebble stones, some three feet in height.   The outlet of the lake is situated at its southeast corner.   The appellee had a ditch on his lands from the lake, connecting with his forty-five acres.   The appellant was the owner of all the lands bordering upon and around the lake, except that owned by the appellee and a small piece of land owned by James Crow, near the northeast corner of said lake.   The declaration contains two counts.   The first count avers that the appellant " wrongfully stopped up, dammed up, obstructed, raised and elevated said waters of said Crystal Lake, and then and there and thereof, and by reason thereof, from thence, during all the time aforesaid, unjustly and wrongfully made and caused to be made and kept and continued, and still doth make, keep, cause and continue, large quantities of the said waters of said Crystal Lake to run and flow to, into, upon and over the said messuage, lands and premises of the said plaintiff, and thereof unlawfully, unjustly and wrongfully, by means thereof, greatly injured the plaintiff," etc.   The second count avers that the appellant " doth cause,

procure and continue large quantities of water to run upon, into and over, and to flow upon and into the lands of the plaintiff." It is first insisted by the learned counsel for the appellant " that the proofs made do not agree with the case alleged, and do not support it." If this position is true, then no recovery could be sustained in this action. Under the well established rule of pleading, the plaintiff must in his declaration clearly state the nature of the defendant's liability, and that liability must be proved as laid. We have carefully examined the record in this case, and while we find a sharp conflict in the evidence, we are not prepared to say that the proof does not sustain the declaration. We do not deem it necessary to refer to the testimony in detail. The evidence for the appellee tended strongly to prove that the placing of the *flash boards* by the appellant, in 1877, at the natural outlet of said lake, had caused the waters in said lake to rise some two feet higher than it was prior thereto; that the lands claimed to have been overflowed had, prior to the placing of the flash boards, been dry and could be cultivated, and that since they were placed at the outlet the waters of said lake had flowed to, over and upon the said land of appellee, causing said land to be overflowed and rendered worthless for crops. There was also evidence for the appellee tending to prove that the placing of the flash boards by the appellant at the outlet of said lake had caused the waters in said lake to rise some two feet higher, and thereby had impeded, dammed and stopped the flow of the water from appellee's ditch into said lake, and had caused the same to flow back to, on and over the appellee's lands, thereby causing said lands to be overflowed. The evidence for the appellant tended to prove that the placing of the flash boards did not cause the waters in said lake to rise higher; that the escape of the waters from said lake had not been impeded, and that no water from said lake had flowed to, over and upon the lands of appellee, and that the escape of the water through the ditch of the appellee into the lake was not dammed, stopped or impeded by the placing of the flash boards. In this conflict of evidence the Supreme Court has uniformly held, " that the verdict will not

be disturbed on the ground the verdict is against the evidence, where there is enough to support the finding." In such a case the court will not attempt to nicely weigh the evidence on each side, and will only grant a new trial when the verdict is manifestly against the evidence. White v. Clayes, 32 Ill. 325; Tolman v. Race, 36 Ill. 472; Umlauf v. Bassett, 38 Ill. 96; Harbison v. Shook, 41 Ill. 141; Stickle v. Otto, 86 Ill. 161; Addems v. Suver, 89 Ill. 482; Howett v. Estelle, 92 Ill. 218. There was no question as to the placing of the flash boards by the appellant at the outlet of said lake, but whether the waters of said lake were raised thereby and caused to flow from and over the lands of appellee from said lake, or whether the water from the ditch of the appellee was impeded, dammed and stopped, and caused to flow back to, on and over appellee's lands in consequence of the placing of said flash boards, were all questions of fact. It was the province of the jury to find the facts and to determine the weight and credit to be given to the testimony. Bishop v. Busse, 69 Ill. 403. The objection to the 3d and 5th instructions given for appellee is not well taken. All of the controverted questions arising in the case were by these instructions clearly submitted to the jury. The fixing of the time at the summer months as to the height of the waters in said lake, prior to the placing of the flash boards, was correct. The question for the jury to determine was so stated, *supra.* We find no error in the law as given. Substantial justice has been done.

*Judgment affirmed.*