ISABELLA J. CARLTON v. JOHN R. CAREY.[1]

May 17, 1901.

Nos. 12,553—(81).

**Memorandum—Evidence.**

> Assuming that an entry or memorandum made in a book or in some other form, in the usual course of business, and at or about the time of the transaction, by a person not a party to the action, who is shown to have had personal knowledge of the facts recorded, is competent evidence of the fact at the trial of an action, it is *held* that the book or memorandum offered in evidence in this instance was not brought within the rule.

**Value of Stone—Evidence.**

> *Held*, further, that there was no testimony reasonably tending to show the amount or value of certain stone alleged to have been removed from the land in question with the consent of the original defendant.

Appeal by plaintiff from an order of the district court for St. Louis county, Dibell, J., denying a motion for a new trial. Affirmed.

*J. W. Bull* and *J. B. Richards*, for appellant.

*A. L. Agatin*, for respondent.

COLLINS, J.

For the third time this case appears in this court. Originally, the action was brought to cancel and set aside a foreclosure proceeding based on a mortgage upon eighty acres of land belonging to the plaintiff. She was successful in the court below, but on appeal by defendant this court required as a condition that she

[1] Reported in 86 N. W. 85.

reconvey to defendant certain lots which had entered into the original transaction, and pay to him a certain amount of money. Carlton v. Hulett, 49 Minn. 308, 51 N. W. 1053. It afterwards appeared that plaintiff's attorney in fact had conveyed certain of the lots mentioned, and therefore that she was unable to comply with the mandate as to a reconveyance. The defendant Hulett had deceased pending the litigation, and upon the substitution of Carey, administrator, as defendant, the court below amended its conclusions of law, and again ordered judgment in plaintiff's favor. On appeal from the judgment this court set it aside, and remanded the case, with certain plain and definite directions as to further proceedings, which, if obeyed, would have then and there terminated the litigation. See Carlton v. Carey, 61 Minn. 318, 63 N. W. 611. The case is now before us on new issues and new facts wholly disconnected from the matters adjudicated and settled by the former appeals. These new matters seem to have been injected into the action several years after the last-mentioned decision, and in absolute disregard of the mandate then sent down. They were brought about by the filing of a supplemental complaint, an answer thereto, and a reply, without any opposition to the framing of new issues, and apparently by consent of both parties. No objection was taken to the making of new issues until the case was brought on for trial by the court without a jury, and then an amendment was made to the answer, in which amendment was set forth the legal effect of the mandate already mentioned. It was then argued for the first time, as we read the record, that the mandate should have been strictly obeyed, and that the court below was powerless to allow new issues to be framed and another trial had thereon. We quite agree with the court below that, although all that had transpired since the remittitur was irregular and unwarranted, it was best under the circumstances for it to hear the proofs, and render its findings and conclusions. By failing seasonably to object to the making of new pleadings and the creation of new issues, defendant's counsel really consented to the irregularity which has crept into the case, and to an unauthorized trial on the facts. We will therefore con-

sider the merits of an order denying plaintiff's motion for a new trial.

1. It is contended by the plaintiff's counsel that it was error for the court below to sustain an objection to the introduction in evidence of the so-called "ledger." This ledger has not been exhibited to this court, and we have no means of knowing its contents. We cannot tell what bearing these contents had upon the issues, or whether they were in point, or, taken as a whole, were at all material at the trial. Assuming, however, that the contents of the book were pertinent and admissible in a proper case, and, if this controversy was between parties legally affected thereby, the court was clearly right in its ruling. This particular dispute was over the amount of stone which had been taken from part of the mortgaged premises by Hulett's permission, and under his lease to a man named Glass.

It appeared in evidence that Glass, who personally worked the quarry, kept a small day or memorandum book, in which he entered the height, length, width, and quality of each car of stone as loaded upon cars standing upon the side track. He also entered in this book, which was kept in the quarry, the name of the party to whom the stone was to be shipped. Each night he carried it to the witness Gasper, who was not at the quarry, but kept a store near by. Gasper then figured out the number of feet of stone on each car, entered this amount upon the so-called "ledger," and charged it to the proper party. What he did, according to his own testimony, was to ascertain how many cords of stone there were on each car, carry out the value thereof on the ledger, together with the number of the car, the ownership initials thereon, and the party to whom the stone was shipped. He knew nothing personally of the amount of stone on each car, or taken from the quarry, or the value thereof. In fact, all of his information was derived from Glass. Hulett, who was then living, had no control over the quarry, or the work going on there, nor was Glass or Gasper representing him in any manner.

Even if the ledger had been the book of a party to this action, and an original book of entries, no proper foundation was laid for its introduction, for there was a total failure to comply with the

requirements of G. S. 1894, § 5738. It belonged to a third party (Glass), who was not present at the trial, and he, as well as the clerk, Gasper, was a stranger to the parties to this litigation. For this reason alone the book was inadmissible in evidence, and, if received, would have been the rankest kind of hearsay. But, in any event, the broadest rule that we have found relating to the admission in evidence of books or memorandums made by and belonging to third parties is that stated by Mr. Abbott in his Trial Evidence (2d Ed.) 398, thus:

"An entry or memorandum, whether in a book or in any other form, made in the usual course of business, and at or about the time of the transaction, by a person not a party to the action, who is shown to have had means of personal knowledge of the fact recorded, is competent evidence of such fact: (1) If the person who made it is produced and verifies the handwriting as his own, and testifies that it was so made, and correct when made, although he may have no present recollection whatever of the transaction; or (2) if the person who made it is dead, and his signature or handwriting is proved, and he does not appear to have had any interest to falsify. If living, though he be without the jurisdiction, he must be produced."

And this rule is qualified by the authorities cited to the effect that the entries must appear to have been made in the regular course of business, under such circumstances as to import trustworthiness; and it is for the court to say, in the first instance, whether the record is of such character, and his decision will not be interfered with unless clearly wrong. Riley v. Boehm, 167 Mass. 183, 45 N. E. 84. And such entries are not admissible if made on information from a third person, although communicated by him in the course of duty. Thomas v. Price, 30 Md. 483; White v. Wilkinson, 12 La. An. 359. Should these rules be adopted in full, the book was inadmissible, because the entries were not made by a person who had any personal knowledge of the transactions to which they related, and the record made by him was wholly based upon information received from a third person. See also 9 Am. & Eng. Enc. (2d Ed.) 937.

But counsel contend that, independent of this book, there was evidence tending to show the amount and value of the stone re-

moved.   From the testimony it is clear that any estimate as to the amount or value of the stone would have been nothing more or less than' guesswork.   As before stated, Gasper knew nothing about it personally.   He had simply been informed by Mr. Glass, and the latter was not a witness at the trial.   Peterson, who was sworn as a witness, went past the quarry to his work, on another tract of land, every day for a month or more, and observed Glass and his men while they were getting out stone.   He merely observed the men as he passed, and he also saw cars on which the stone taken from this quarry and from another one adjoining, but belonging to other parties, was loaded.   Peterson did not pretend to state positively in reference to any of these matters, and when the question was asked as to the space in the quarry occupied by the stone which had been removed he stated its dimensions, but with the qualification that he was "just guessing at it."   Another witness (Crowley) testified as to values, and also as to the amount of work that a certain number of men could do within a stated number of days while working in stone of this character.   He also stated the number of cords of stone that might be removed from a quarry of certain dimensions, but any finding of the number of cords actually removed, based upon this testimony, could be nothing more than conjecture.   Upon the evidence properly received as to the number of cords removed we are convinced that the plaintiff ought not to complain of the finding of the court below that the stone was of the value of $50, for it is really a greater sum than was proven as such value.   The court would have been warranted in finding merely nominal damages.   It is true that absolute certainty as to the exact amount of damages sustained in such a case is not required, but there must be such reasonable certainty of result and such approximate proof as the nature of the case will permit.   We need not, for reasons perfectly apparent, discuss the question of the proper measure of damages in such a case.

Order affirmed.