WISCONSIN STEEL CO. v. MARYLAND STEEL CO.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1913.)

No. 1,863.

**1. CONTRACTS (§ 27\*)—PROPOSAL AND ACCEPTANCE—IMPLIED AGREEMENT.**

Defendant was having three engines built, and, when the work was stopped by a strike in the works of the contractor, made a written contract with plaintiff to complete two of the engines for a stated per cent. above cost. After the work was commenced, defendant's manager, who was in plaintiff's shops, said to the foreman that he was going to send them the third engine to complete, and was referred to the manager. It appeared that he did not see the manager, but the latter was informed by the foreman of the proposal, and when, a few days later, the uncompleted parts of the third engine were received, plaintiff accepted the same and built the engine with the others. *Held*, that defendant's proposal, taken in connection with the acts of both parties following, constituted a contract for the completion of the third engine, on the same terms as the other two.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 121–132; Dec. Dig. § 27.\*]

**2. CONTRACTS (§ 4\*)—PROPOSAL AND ACCEPTANCE—IMPLIED AGREEMENT.**

Acts and circumstances that show, according to the ordinary course of dealing and the common understanding of men, a mutual intent to contract, may be taken in law as the basis for implying a contract in fact.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 4–6; Dec. Dig. § 4.\*]

**3. EVIDENCE (§§ 354, 376\*)—BOOKS OF ACCOUNT—ADMISSIBILITY.**

A machine works employed in its shops 4,500 men, and in order to know the amount paid out in wages on each piece of work it adopted a system under which each workman filled out a daily time card, showing the amount of time he was employed on each job, and from such cards the bookkeepers made proper charges in the book accounts kept with each piece of work in terms of money, based on the wages paid the workman. *Held*, that such book entries, properly authenticated, were admissible in evidence against the person charged, and that the time cards were also admissible as corroborative evidence, without proof of the handwriting of the workmen making the same, both under the general law of evidence and under St. Wis. 1911, §§ 4186, 4187, 4189, the latter of which provides that, in case entries "are, in the usual course of the business, also made in other books or papers as a part of the system of keeping a record of such transactions, it shall not be necessary to produce as witnesses all of the persons subject to subpœna who were engaged in the making of such entries," if the court shall be satisfied of their genuineness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1432–1483, 1628–1646; Dec. Dig. §§ 354, 376.\*]

**4. EVIDENCE (§ 354\*)—BOOKS OF ACCOUNT—ADMISSIBILITY.**

That workmen's daily time cards, under the system of bookkeeping employed in a large machine shop, showed the time the workman was employed on each particular job, while the book entries made therefrom were in terms of money, and not of time, constitutes no objection to the admissibility of such books in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1432–1483; Dec. Dig. § 354.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. PAYMENT (§ 70*)—EVIDENCE—RECEIPTS FROM THIRD PARTIES.

Where a contract by which plaintiff agreed to build engines **for defendant** required defendant to deliver certain castings therefor f. o. b. at plaintiff's shops, receipts from the railroad company for freight paid by plaintiff on such castings are admissible in evidence in support **of** charges made against defendant for such freight.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 203, 204, 206–218; Dec. Dig. § 70.*]

In Error to the Circuit Court of the United States for the Western District of Wisconsin; Arthur L. Sanborn, Judge.

Action at law by the Maryland Steel Company against the Wisconsin Steel Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Maryland Company recovered judgment against Wisconsin Company for a balance alleged to be due for work done by Maryland Company at its shops on three engines for Wisconsin Company.

Work on two of the engines was admittedly covered by a written contract between these parties. Circumstances leading to the execution of this contract were these: Wisconsin Company had a written contract with Mesta Company of Pittsburgh for the three engines. A strike in the Mesta shops stopped the work. Wisconsin Company, in urgent need of the engines, tried to have Mesta Company sublet the work. Maryland Company declined to enter into any relations with Mesta Company, but made the following contract with Wisconsin Company:

"The work to be performed to this agreement is the complete machining of parts and assembling of same of two (2) low pressure Westinghouse blowing engines.

"It is agreed between the parties of this contract that the castings for said engines, including all parts to be machined, shall be delivered free on board cars Sparrows Point, the same to be machined as per blue prints and specifications submitted, and delivered f. o. b. cars Sparrows Point, Md.

"It is understood and agreed between the parties of this contract that the consideration for the work to be performed shall be cost, plus burden (afterwards agreed upon as 40% of cost), plus 10%; the 10% being profit over and above actual cost and burden, which it is agreed shall be paid the Maryland Steel Company, as their bills may be rendered from time to time, and shall be paid when the machined parts are delivered on board cars at Sparrows Point.

"It is understood and agreed between the parties of this contract that an inspector employed by the Wisconsin Steel Company shall be admitted to their works during working hours and allowed to inspect and pass on any parts of said work under way, and it is further agreed that any work rejected by said inspector, owing to imperfect workmanship, or other reason, shall be open to adjustment between the inspector and your general superintendent, or foreman of shop, and it is agreed that, if these two parties cannot agree, the third party shall be called into settle the dispute."

Thereupon Mesta Company agreed to indemnify Wisconsin Company against having to pay more for the two engines than the Mesta contract price.

Maryland Company made and delivered the three engines, and claimed pay for the third engine under an alleged parol contract of the same tenor as the written contract. Wisconsin Company then for the first time realized that it had failed to take indemnity from Mesta Company for the third engine, and denied the alleged parol contract.

At the trial plaintiff undertook to show (1) the existence of the alleged parol contract and (2) the actual cost to plaintiff of machining and assembling the parts of the three engines. (For the additions of 40 per cent. burden and 10 per cent. profit are merely matters of calculation.) The jury by their general verdict, and also in answer to a special question, found that the parol

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contract had been duly made. One of defendant's contentions is that there was no evidence to warrant this finding.

To prove cost, plaintiff introduced, over defendant's objections, various books, cost sheets, and workman's time cards.

Some of these objections are based on the following sections of the Wisconsin statutes:

"Sec. 4186. Whenever a party in any cause or proceeding shall produce at the trial his account books and swear that the same are his account books, kept for that purpose; that they contain the original entries of charges for goods or other articles delivered, or work and labor or other services performed or materials found, and that such entries are just, to the best of his knowledge and belief; that said entries are in his own handwriting and that they were made at or about the time said goods or other articles were delivered, said work and labor or other services were performed or said materials were found, the party offering such book or books as evidence, being subject to all the rules of cross-examination by the adverse party that would be applicable by the rules to any other witness giving testimony relating to said book or books, if it shall appear upon the examination of said party that all of the interrogatories in this section contained are satisfactorily established in the affirmative, then the book or books shall be received as presumptive evidence in proof of the charges therein contained.

"Sec. 4187. Whenever the original entries mentioned in the preceding section are in the handwriting of an agent, servant or clerk of the party the oath of such agent, servant or clerk may in like manner be admitted to verify the same, and said books shall be testimony in the same manner as the books mentioned in the preceding section: Provided that such books mentioned in this and the preceding section shall not be admitted as testimony of any item of money delivered at one time exceeding five dollars, or of money to third persons, or charges for rent."

"Sec. 4189. Any entries made in any book by a person authorized to make the same, he being dead, may be received as evidence in a case proper for the admission of such books as evidence. Entries in a book or other permanent form, other than those mentioned in sections 4186 and 4189b, in the usual course of business, contemporaneous with the transactions to which they relate and as part of or connected with such transactions, made by persons authorized to make the same, may be received in evidence when shown to have been so made upon the testimony either of the person who made the same, or if he be beyond the reach of a subpœna of the trial court or insane, of any person having custody of the entries and testifying that the same were made by a person or persons authorized to make them in whose handwriting they are, and that they are true and correct to the best of his knowledge and belief. In case such entries are, in the usual course of the business, also made in other books or papers as a part of the system of keeping a record of such transactions, it shall not be necessary to produce as witnesses all of the persons subject to subpœna who were engaged in the making of such entries; but before such entries are admitted the court shall be satisfied that they are genuine and in other respects within the provisions of this section."

Frank H. Scott, Edgar H. Bancroft, Redmond D. Stephens, John E. MacLeish, and George N. B. Lowes, all of Chicago, Ill., and John A. Aylward, of Madison, Wis., for plaintiff in error.

Victor Elting, of Chicago, Ill., and John M. Olin, of Madison, Wis., for defendant in error.

Before BAKER and SEAMAN, Circuit Judges, and HUMPHREY, District Judge.

BAKER, Circuit Judge (after stating the facts as above). [1] Respecting the contract for the third engine, Lee, plaintiff's master mechanic, testified that Wells, defendant's manager, while going through

plaintiff's shops and looking over the work being done on the two engines, said, "Lee, I'm going to send you that high pressure engine to build;" that Lee answered, "All right, send it along;" that, as Wells was leaving, Lee called him back and asked, "Have you seen Mr. Martin (plaintiff's manager) about this?" that Wells replied, "No, but I am going to;" that Lee informed Martin of Wells's intention to send the castings (then at the Mesta plant) of the third engine to be machined and assembled by plaintiff; that within a week or so castings of the third engine began to arrive, intermingled with castings of the other engines; that plaintiff accepted these castings and built this engine along with the others.

[2] Defendant contends that the above-stated conversation between Lee and Wells did not constitute a contract. In and of themselves the words did not. Though defendant, through Wells, made a proposal, Lee not only had no authority to accept for plaintiff, but notified Wells, in substance, that he could not bind plaintiff without Martin's approval. But, in our judgment, the words, in connection with the relations of the parties and the act of defendant in sending the castings and the act of plaintiff in accepting the castings for machining, completed the contract. When defendant sent the castings, the jury were warranted in finding that this was done in pursuance and in renewal of the proposal made to Lee, and that the proposal, in view of the relations of the parties and the status of the work on the two engines, meant and was intended to mean that plaintiff should do the work on the third engine along with the work on the other two and on the same terms. And when plaintiff accepted the castings and undertook the work, the jury were warranted in finding that plaintiff, though nothing was said between the parties at that time, accepted by its acts the proposal of defendant as effectually as words could have done so. Acts and circumstances that show, according to the ordinary course of dealing and the common understanding of men, a mutual intent to contract, may be taken in law as the basis for implying a contract in fact. 15 Am. & Eng. Ency. of Law (2d Ed.) 1078, and cases cited.

[3] Plaintiff had a large shop, employing over 4,500 workmen at the time in question. In order to know how much was paid in wages in the execution of every job, whether for itself or others, plaintiff employed a cost system at the bottom of which were workmen's time cards. On registering in, a clerk saw to it that each workman got his own card; on registering out that each deposited his card in a locked box. If a workman failed to deposit his card, his time, which should have been accounted for on the card, would not appear in the pay roll. These cards were before the workmen at their respective places, and it was their duty, and their practice in pursuance of that duty, to note in writing on their cards the amount of time given to each separate piece of work. From these cards, bookkeepers prepared the pay rolls, and also sheets which distributed to each job each workman's time upon that job, not in terms of time as reported on the card, but in terms of dollars and cents on the basis of wages paid. Then upon

plaintiff's account books these items were charged against each job and against the parties who were having the job work done.

"Regular entries in due course of business are admitted as exceptions to the hearsay rule. Wigmore on Ev. c. 51. To bring entries within the exception, there must appear, according to the general law of evidence, a practical necessity for their introduction and a circumstantial guaranty that the transactions actually took place as recorded. The practical necessity is apparent in large mercantile and manufacturing businesses, where a transaction that has been participated in by numerous employés in the course of their employment is duly recorded as an original entry in permanent form by one who is charged with that duty in pursuance of an established system. Wigmore, § 1730." Feuchtwanger v. Manitowoc Malting Co., 187 Fed. 713, 109 C. C. A. 461.[1]

Plaintiff's books, in which original entries (based on the cards) in permanent form were made in pursuance of a duty, were properly admitted in accordance with the foregoing rule. The 4,500 workmen could not keep plaintiff's books of account. The limit of practicability was for them, under an orderly system, to furnish the data in the aggregate from which bookkeepers regularly employed for that purpose could make up the separate accounts.

Workmen's time cards and other parts of the system (apart from the books) were properly admitted, in our judgment, if for no other reason, because they tended to furnish the "circumstantial guaranty" of the correctness of the book entries.

But we are of the opinion that the books, time cards, and other parts of the system were admissible under the Wisconsin statutes as well as under the general law of evidence. These statutes, indeed, impress us as intended for a statutory ratification of the general law above stated. The books and entries were identified in accordance with sections 4186 and 4187. And the time cards and other parts of the system were admissible, without direct proof of the handwriting of the workmen, under the last sentence of section 4189. These entries

[1] See Firemen's Ins. Co. v. Seaboard A. L. Co., 138 N. C. 42, 50 S. E. 452, 107 Am. St. Rep. 517; Donovan v. R. R. Co., 158 Mass. 450, 33 N. E. 583; State v. Stephenson, 69 Kan. 405, 76 Pac. 905, 105 Am. St. Rep. 171, 2 Ann. Cas. 841; Louisville & N. R. Co. v. Daniel, 122 Ky. 256, 91 S. W. 691, 3 L. R. A. (N. S.) 1190; Diament v. Colloty, 66 N. J. Law, 295, 49 Atl. 445, 808; Cockran v. Rutter, 76 N. J. Law, 375, 69 Atl. 954; Corkran v. Taylor, 77 N. J. Law, 195, 71 Atl. 124; Madunkeunk Co. v. Allen Co., 102 Me. 257, 66 Atl. 537; Wells Whip Co. v. Tanner's M. F. Ins. Co., 209 Pa. 488, 58 Atl. 894; Pelican Lumber Co. v. Johnson, 44 Tex. Civ. App. 6, 98 S. W. 207; Pittsburgh, etc., R. Co. v. Chicago, 242 Ill. 178, 89 N. E. 1022, 134 Am. St. Rep. 316; Reyburn v. Queen City Co., 171 Fed. 609, 96 C. C. A. 373; Cooke v. People, 231 Ill. 9, 82 N. E. 863; Richardson Co. v. Seymour, 235 Ill. 319, 85 N. E. 496; Mahoney v. Hartford Ins. Co., 82 Conn. 280, 73 Atl. 766; Hitchner Co. v. Penn. R. Co. (C. C.) 158 Fed. 1011; Ryan Car Co. v. Gardner, 154 Ill. App. 565. And compare: Dohmen v. Blum's Estate, 137 Wis. 560, 119 N. W. 349; Stickle v. Otto, 86 Ill. 161; Chicago Lumbering Co. v. Hewitt, 64 Fed. 314, 12 C. C. A. 129; Rumsey v. N. Y. & N. J. Tel. Co., 49 N. J. Law, 322, 8 Atl. 290; San Francisco Teaming Co. v. Gray, 11 Cal. App. 314, 104 Pac. 999; Carlton v. Carey, 83 Minn. 232, 86 N. W. 85; Gould v. Hartley, 187 Mass. 561, 73 N. E. 656; Swan v. Thurman, 112 Mich. 416, 70 N. W. 1023; Kent v. Garvin, 1 Gray (Mass.) 148; Putnam v. Grant, 101 Me. 240, 63 Atl. 816; 1 Greenleaf on Evidence, § 118 (Note); Corr v. Sellers, 100 Pa. 169, 45 Am. Rep. 370.

related to the same transaction as the book entries; they were made in the usual course of the business, by men whose duty it was to make them, and on papers provided as parts of a system of records. The only condition of their admissibility is that "the court shall be satisfied that they are genuine and in other respects within the provisions of this section." On proof of how the cards were prepared, how furnished to the workmen, how taken up, how preserved, and how produced at the trial, the court might well hold, preliminarily, that they were genuine. And since the presence of the workmen to prove their handwriting upon the cards is expressly dispensed with, it should not be inferred that other witnesses must be produced who could testify to the handwriting of 4,500 workmen. If, from other proof above indicated, the court has properly become satisfied that the cards are genuine, proof of handwriting, by others, when the workmen themselves are excused, would be superfluous. Not only superfluous, but impracticable, for it might well be more difficult to find witnesses qualified to verify 4,500 handwritings than to produce the men themselves. Therefore the "other respects" in which the cards must meet the provisions of the section are that they relate to the transactions in suit and were made contemporaneously therewith. In Dohmen v. Estate of Blum, 137 Wis. 560, 119 N. W. 349, the court held that the plaintiff's own books of account were admissible under sections 4186 and 4187, or not at all, and denied plaintiff's contention that his books were nevertheless admissible under section 4189, saying:

"The books, could not come within both sections. Section 4189 renders competent only 'entries in a book or other permanent form other than those mentioned in sections 4186 and 4189b.'"

But the court had nothing before it involving the construction or application of the last sentence of section 4189, which, it seems to us, if it is to have any force whatever, must apply to scratch books or papers like salesmen's slips and workmen's cards, from the information on which the first entry is made on the permanent record.

[4] A further objection to plaintiff's system of records was that the information on the workmen's cards was not entered on the books in terms of time, but in terms of money. If a salesman's slip, showing the sale of a handkerchief, for example, were written in French, we see no valid objection to putting down the information in English. The essence of the matter is whether the information has been correctly set down. The bookkeeper identifies his books, and testifies that the entry was made in regular course of business and is just and accurate to the best of his knowledge. For purposes of verification, a retranslation of the English into French would furnish as good a basis of comparison as English with English or French with French. And so here, the entry in terms of money could be readily retranslated into terms of the workman's time.

Foremen at plaintiff's plant, who had general duties of superintendence, received salaries which were included in burden or overhead expense. Certain subforemen were paid wages for time along with the workmen. Defendant insists that the wages of these subforemen should not have been included in the labor cost. Evidence showed that

such a subforeman was an experienced mechanic, looked after certain machines and the operations thereof, advised the operatives with reference to the doing of the work, and ran machines, when operatives were in difficulties, until the operatives came to understand the trouble. We find that from all the evidence bearing on the matter the jury were justified in concluding that the wages of such subforemen were properly included in labor cost.

Witnesses who explained plaintiff's system of records were permitted to testify that there had never been "any controversy over any bills rendered under this system to customers heretofore." We deem this testimony proper as incidental proof of the trustworthiness of the system.

One Fife, a cost man of the Mesta Company, was at plaintiff's shop and checked up the work on defendant's engines. Written reports of his checking were admitted in evidence. They were not admitted, however, as independent documents, but only in connection with his testimony on the subject. This, we think, was unobjectionable.

[5] Freight receipts were admitted in evidence. It appears from the record that some of the papers were "delivery" receipts, not "freight" receipts. Plaintiff insists that the delivery receipts disclose the amounts paid by plaintiff for freight on defendant's castings as clearly as do the freight receipts. But we will not go into that matter, because court and counsel all treated the papers as being of the same class. Nor will we set forth the evidence to show that the receipts were the genuine receipts of the railroad companies. The only question of law in this connection, which was pressed upon the attention of the court and ruled upon, was the admissibility of genuine receipts to prove plaintiff's payments of freight upon defendant's castings.

As a general rule a receipt of a stranger to the suit is not admissible against a party as proof of the fact of payment. But there are exceptions. One is the receipt of a person who is pointed out in the contract of the party against whom the receipt is offered. 23 Am. & Eng. Ency. of Law (2d Ed.) 981, 982, and cases cited.

In the contract sued upon in this case it was agreed that the castings should be delivered f. o. b. cars at plaintiff's station. This meant that, if the shipper did not pay the freight in advance (as quite generally the shipper does not), the consignee should pay it and charge it to the shipper's account. So the contract, in view of defendant's failure to prepay the freight, designated the railroad companies as parties to whom plaintiff should make payments on defendant's account.

On review of the entire record, we find not only that no errors were committed in the trial, but that any other verdict and judgment would have been a miscarriage of justice.

The judgment is affirmed.