## SIMON SALO v. DULUTH & IRON RANGE RAILROAD COMPANY.[1]

March 7, 1913.

Nos. 17, 946—(191).

**Error to admit evidence.**

1. Ruling of the trial court, in an action against a railroad company for loss by a fire alleged to have been set by it, allowing the defendant to read to the jury certain newspaper articles and telegrams concerning a fire at a certain point on the defendant's right of way, such items being offered in connection with the testimony of witnesses as to when the fire crossed the tracks at a point mentioned, *held*, upon the facts of the case, error.

**Error prejudicial.**

2. Such error *held* prejudicial, and not cured by the court's observations and instructions.

[1] Reported in 140 N. W. 188.

**Unverified complaint.**

    3. Where a complaint in an action was not verified, and was neither signed by the plaintiff nor otherwise adopted by him, and no knowledge of its contents was brought home to him, it was not, after having been superseded by an amended complaint, admissible against him for any purpose, except upon the mere fact of its existence.

Action in the district court for St. Louis county to recover $4,800 for standing timber and personal property destroyed by fire, allowed by the negligent and wilful acts of defendant to escape from its engines upon its right of way and communicated to plaintiff's property. The substance of the answer will be found at the beginning of the opinion. The case was tried before Cant, J., and a jury which returned a verdict in favor of defendant. From an order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Reversed.

*J. De La Motte,* for appellant.
*Baldwin & Baldwin,* for respondent.

PHILIP E. BROWN, J.

The plaintiff brought an action against the defendant and the Adriatic Mining Company jointly to recover damages alleged to have been sustained from a forest fire set by them, and which burned over and injured his farm and personal property. This defendant having demurred on the ground of the improper uniting of causes of action, the plaintiff dismissed the action against the Mining Company, and charged the defendant with sole accountability for his loss by an amended complaint interposed by leave of court. The defendant then answered, denying responsibility for the fire, and affirmatively alleged that the plaintiff had claimed that the Mining Company had set the fire, and, further, that subsequently to his loss he had adjusted and compromised his claim for damages for a valuable consideration with the Mining Company. Issue was joined on these claims by reply. The jury before whom the case was tried returned a verdict for the defendant. The court having denied the plaintiff's motion for judgment notwithstanding the verdict or for

a new trial, he appealed from the order. The case comes here on a bill of exceptions.

The plaintiff insisted on the trial, introducing sufficient evidence to require the submission of such claim to the jury, that on June 9, 1910, fire escaping from one of the defendant's locomotives on its spur track started a conflagration at a point about two miles west of its main line, which burned from there easterly, crossing the defendant's main line and extending to and destroying the plaintiff's property, some ten miles distant, on the 18th of the same month. Concededly this fire could not have reached the plaintiff's land without crossing the defendant's main line near Mesaba Station between mileposts 77 and 78. The plaintiff offered sufficient evidence, if believed by the jury, to require a finding that the fire which destroyed his property crossed the track at the place indicated on or about June 13th. The defendant denied that it set the fire mentioned, or that any fire originated by it damaged the plaintiff, and, while admitting that a fire did cross its main line at the point mentioned, claimed that this occurred on June 20, two days after the plaintiff's loss, and further denied that any fire crossed its track at any other time.

From the facts stated it will be observed that the sharp issue— the one upon which the verdict of the jury no doubt hinged—was as to the date on which the fire crossed the track. To support its claims in this regard, the defendant called one of its locomotive engineers as a witness, and proved by him that in June, 1910, he was driving a locomotive on the defendant's main line between Duluth and Ely, Mesaba being an intermediate station thereon; that he did not go through any fire crossing the track at the point mentioned, near Mesaba, but that when running his engine south, in the morning, he observed a fire about one-half mile distant from the point referred to, approaching the track. He further testified, in substance, that when he arrived at Duluth, hearing people talking about the fire and he being interested because it was a large fire, he made inquiries himself, and on the same evening obtained a newspaper, the Evening Herald, and read an item therein concerning the fire; that the next time he went north after reading the item was on the morning of the 21st, the next day, but that before going he read another item

in a newspaper, the Duluth News-Tribune, on the same subject; and that when he went north the same morning the fire, coming from the west, had crossed the track near Mesaba, near where he had seen it approaching on the previous morning and gone, there being a little smouldering fire left. The witness having identified both of the newspaper articles referred to, the defendant's counsel offered the first in evidence, together with the name of the paper and the day and date of issue. This was objected to as incompetent, irrelevant, and immaterial, and no proper foundation laid, and hearsay. The court overruled the objection, and the following was read to the jury:

"THE DULUTH HERALD, MONDAY EVENING, JUNE 20TH, 1910.

## "RAILROAD BRIDGE BURNING.

"Two Harbors, Minn., June 20. (Special to the Herald.) Fires are bad along Duluth & Iron Range main line. The Mesaba Bridge is burning. Men are watching the fires to prevent further spreading."

Thereafter the defendant offered the item in the News-Tribune, and subsequently the same proceedings occurred, except that in response to a question asked of the court by the plaintiff's counsel, "What the purpose of the offer is, what is it intended to prove? Is it intended for the purpose of refreshing the witness' recollection? Is it intended for the purpose of proving a fact in issue?" The court replied, "Proof of date," and after the plaintiff's counsel had interposed his objections at length, fully advising the court of his point, the court observed: "Well, do you stipulate that, subject to your objection, the article to which you refer is found in a paper of a certain date? If you care to do that, the matter may be excluded, but the matter is offered in connection with the date, to prove the date."

Thereupon the objections were overruled, and the following proceedings, as shown by the record, occurred, together with others here immaterial:

"Mr. De La Motte [Plaintiff's Counsel]: Now may I ask the court what is the theory of the admission of the exhibit?

121 M.—6.

"The Court: It is admitted for the purpose of proving the date.

"Mr. De La Motte: Proving the date?

"The Court: Yes.

"Mr. De La Motte: And not for the purpose of proving the fact that is set forth in the article?

"The Court: Well, the facts set forth in the article are those things which fix in the mind of the witness the particular paper which he read and enables him to identify it as the paper of that date."

The court then, in answer to further detailed objections by plaintiff's counsel, said:

"The matter is not received as evidence of the facts therein set forth. We do not care where this matter came from or whether it is authentic and correct or not. * * * It is that he saw something which arrested his attention, and he surely saw it on that date. He can't tell us the date, except by again referring to that paper wherein he saw that statement or that announcement.

"Mr. De La Motte: That may be true, your honor, with reference to fixing the time, but here is something more than the time. Of course, if the court will instruct the jury that this article in the paper is not to be taken into consideration by them at all as establishing the fact, if it can perform that office with the jury and take from their minds something that they have seen in this paper, why then it would seem that it would not do any harm.

"The Court: The court has made that statement in the presence of the jury, and they are instructed in accordance therewith."

The article from the Tribune was then read to the jury, as follows:

"TUESDAY.   THE DULUTH NEWS-TRIBUNE.   JUNE 21, 1910.

## "RAILROAD PROPERTY THREATENED BY FIRE.

"Range Bureau of the News-Tribune. Two Harbors, June 20. The Duluth & Iron Range Railway Company today sent a locomotive equipped with apparatus to fight fire to the 77 mile post, to protect the bridges and station houses in that vicinity. The forest fires

have been raging in this region for some time and the danger is increasing."

The defendant called as a witness one of its servants, who testified that he was the station agent and operator at Mesaba in June, 1910, and remembered that a fire crossed the tracks a little north of the station, at the culvert between mileposts 77 and 78, during that month; that he saw the fire from the station, but had no independent recollection of the date of the occurrence; that he kept a record of the telegrams sent by him to the defendant in a book called "agent's message book," and that by referring to the messages therein regarding the fire he could tell the date when the fire crossed the tracks near Mesaba. He identified the book, and testified that the messages were sent on the date designated therein, and the book was offered in evidence, with special reference to the telegrams mentioned. The plaintiff objected to this as incompetent, irrelevant, hearsay, and a self-serving declaration.

In the course of the discussion concerning the admissibility of the book and during the colloquy between the plaintiff's counsel and the court, the latter observed, among other things, that "the matter of the telegrams we care nothing about except to identify the date. We care nothing about the matter of the telegrams. It does not prove anything, and we do not care anything about it except that from the matter thereof he knows it was coincident with the fire, and the date attached to that matter which was sent thus coincident is important." The witness, in response to the following question, asked in the course of further interrogation: "You knew the facts stated in these telegrams to be correct at the time you sent them?" answered, "Why, as one states there, I was advised. I was just merely communicating what had been stated to me." The objection to this testimony was renewed, but the court, reiterating that the date was the important thing, overruled the objection, and the copies of the following telegrams were read to the jury from the book:

"6-20-10. P. J. W. Forest fires burning on right of way quarter mile north of station. It may be dangerous for train to pass there on account heavy smoke and flame. W. N. C."

"P. J. W. Section foreman advises bridge 78A is in danger of burning. Fire so hot it has become impossible to stay and protect it. W. N. C."

The initials of the addressee of these telegrams were those of the train dispatcher, and those appended thereto were those of the witness. Exceptions were duly taken to the court's rulings. The bridge referred to was the Mesaba bridge over the culvert referred to by all the witnesses, and was in the course of the fire in controversy.

1. Were the newspaper articles and the copies of the telegrams admissible in evidence? If not, was their admission nonprejudicial or rendered harmless by the court's observations made during the discussions concerning their admissibility, or by the instructions given? While these items of evidence do not all stand upon the same ground, they have features of similarity, and hence we will discuss them together.

We have no doubt that all were proper to be used as means of refreshing memory as to date, and it is of no consequence that the witness had no connection with the making of the newspaper articles. 3 Dunnell, Minn. Dig. § 10331. Generally, it matters little what is referred to by a witness for the purpose of awakening dormant recollections as to the time of an occurrence, provided it may fairly be said that this end is accomplished. Culver v. Scott & Wolston Lumber Co. 53 Minn. 360, 365, 55 N. W. 552. But the questions involved here go far beyond this, and cover the competency of the several items as substantive evidence, for it is elementary that a writing may properly be used to refresh memory, and yet itself not be admissible. We are unfamiliar with any rule rendering either of the newspaper articles competent to go to the jury under the circumstances disclosed. They were mere hearsay, and should not have been admitted. 16 Cyc. 1213. And the same must be held with reference to the second telegram. The witness had no personal knowledge of the facts stated in this telegram, and was simply reporting to the dispatcher what a section foreman told him. The transaction did not materially differ from such a communication by mail, and it could not be claimed that either the original letter or a copy thereof would be competent. The rule in this regard is thus stated in 1 Dun-

nell, Minn. Dig. § 3346: "All the cases agree that a memorandum made by a witness from statements made to him by another person, although communicated in the course of duty, is inadmissible as substantive evidence." See, also, the cases there cited, and Price v. Standard L. & Acc. Ins. Co. 90 Minn. 264, 269, 95 N. W. 1118.

And while these several items were ostensibly offered merely for their date, they nevertheless contained other matter which should not have gone to the jury, of which we will presently further treat. In the first telegram, however, the witness claims to have reported to his superior facts within his personal knowledge, and there can be no objection here on the ground that the entry was made upon hearsay. Still, we think it was error to admit this telegram. There is much confusion and disagreement in the authorities on the question of the admissibility of memorandum evidence where a witness' memory is not revived thereby, but he swears that it contains a correct record of his recollection at the time of its making, and that at such time he knew the facts therein stated were true to his then personal knowledge. Wigmore on Evidence, §§ 734–763; Elliott on Evidence, § 872; 3 Dunnell, Minn. Dig. §§ 3346, 10328. We are content to leave the general discussion of these questions to the text-writers and encyclopedists. The record in the present case presents a very narrow phase of the controversy, and requires, we think, neither academic discussion nor extended review of the authorities.

The only claim made by the defendant, and the only one which, under the testimony, could be made, is that the telegram was used "to refresh the memory of the witness as to the date on which the fire crossed a certain point, and was admitted in evidence as tending to establish the said date." No claim is, or could be, made that the witness' recollection required refreshing as to the contents of the writing other than the date, or that he could not remember the alleged facts stated therein. The propriety of the admission of the item is predicated upon certain preliminary testimony of the witness, introduced prior to the reception of the evidence, which may be summarized as follows: That the witness had no independent recollection as to the date of the fire referred to in the telegram; that, notwithstanding his reference to the book containing the copy of the message,

he had no independent recollection of the date, but that he could state the date because he knew that it was there recorded, and knew of his own knowledge that the telegrams were inserted in the book on the date under which they were entered. So that we are more concerned with the practical application of the rule deducible from the decisions than in formulating one which may fit all possible circumstances, remembering the principle that, where the reason for a rule ceases, the rule itself should cease. Moreover, we think the same result would follow in the application of any of the variant statements of the rule to which we have been referred, or which we ourselves have found.

The effect of the ruling under consideration was to place before the jury not only the date of the telegram, but also a statement in writing, made by the witness, the defendant's agent, of certain details of the crucial fact in issue, and purporting, moreover, to have been made before the litigation was commenced and in the absence of the plaintiff, and all this under the guise of showing the date of the transaction recorded. We cannot sustain such an application of the rule, whatever the true rule may be deemed to be. At the most, if indeed any portion of the telegram should have gone to the jury under the circumstances, the date alone should have been submitted to them under proper safeguards, subject, of course, to the right of inspection by the plaintiff's counsel and also his right to offer the whole document in evidence if he so desired. Wigmore on Evidence, § 763.

It is often important to consider where the application of a rule will lead, and the resulting consequence. For example, given a case of a civil action for an assault and battery, and the defense "not guilty." On the trial the date becomes material, no matter how. A witness for the plaintiff testifies to being an eyewitness of the occurrence, and swears that he cannot remember the date, but that thereafter, on the same day, he wrote to another an account of the happening, and knows that he correctly dated his communication, and upon this being shown him he testifies substantially as did the sender of the telegram in this case. Should the whole letter be received in evidence merely to show the date, as against the defendant's objection, notwithstanding that it contains a detailed statement of the assault,

highly detrimental to the defendant? If so, then the same result would follow in criminal actions.

Can a good reason be suggested for basing the admissibility of the entire contents of a memorandum on the ground of their failure to refresh memory as to a part, and thus make the test, not the competency of what is stated therein, which is the important thing, but the forgetfulness of the witness? If such can be, then what constitutes proper matter to go to the jury in such cases will always depend upon the forgetfulness or lack thereof of the witness. In the former case, what otherwise would not be evidence at all would become competent because of collateral facts, and in the latter not; so that a decided advantage would result to a party from the mere fact that his witness is unable to remember. Under such a theory, if the witness had testified that the date of the telegram did refresh his memory so that he could state the time of the occurrence independently of the memorandum, then the whole telegram would be inadmissible, under all the authorities; but, simply because he testified that his memory as to the date was not revived by inspection thereof, is it possible that the whole instrument should have been read to the jury? It is true that the body of the telegram accords with the testimony of the witness and also generally with the defendant's theory, yet this does not bear upon the admissibility of the whole telegram, but only upon the question of prejudice, which we will next consider.

2. Was the admission of the newspaper articles and the telegrams prejudicial? We are averse to the determination of this question in the affirmative unless it appears quite probable that the result was affected by the erroneous admission of these items, and our position in this regard is in accord with the settled rule of this court. Moreover, we should, in this, be guided by practical rather than theoretical considerations; and the experience gained as practising lawyers and as trial judges may well be exercised in reaching a conclusion, both upon the question stated and upon the kindred one of whether the error was cured by the court's observations during the trial and in the instructions given.

The case was undoubtedly a close one on the competent evidence, and we think it would be an unwarranted reflection upon the astute-

ness of the defendant's counsel to question his appreciation of the importance to his client of the evidence in question. Knowing the issues involved in this action, would any experienced attorney willingly permit to sit in the case a juror who had read the newspaper articles and the telegrams which were read to the jury? When the newspaper items came up for discussion in the jury room, is it not probable that the jury considered them as importing information from independent and disinterested sources, to the effect that fire occurred on the defendant's right of way on June 20, and that they fully realized that a determination to the contrary would be in conflict with what purported to be a contemporaneous general report concerning the date of the fire, such report being thus brought to the aid of the defendant's contentions? And would they not likely say that the telegrams, apparently sent prior to any controversy over the defendant's liability for fire loss, were authentic, not only in detail, but also in time? Can we say that the purpose, or at least the effect, was not to refresh the minds of the jurors rather than the memory of the witness? In short, can it be said that it is not highly probable that the detailed recitals of the newspaper articles and the telegrams did not lend an unwarranted credence to the defendant's contention as to the date? These interrogatories suggest that the matter is too close to justify a pronouncement as a matter of law that there was no prejudice.

We have reached the same conclusion after considering the defendant's claim that the court's observations, the plaintiff's attitude on the trial, and the instructions rendered the objectionable matter harmless. It is true that the court repeatedly observed, and on one occasion during the trial instructed the jury, that the items in question were material, and should be considered by them solely in fixing the date of the fire, and that the instructions were fully, fairly, and clearly to the same effect, yet the evidence was so vital that we cannot say that any instructions or observations which the court could have given or made would have destroyed its effect. See Crowley v. Burns B. & M. Co. 100 Minn. 178, 182, 110 N. W. 969; State v. Yates, 99 Minn. 461, 464, 109 N. W. 1070. The defendant's point that the plaintiff is precluded from insisting that the second newspaper arti-

cle was improperly admitted because the court gave his counsel the privilege of stipulating as to its date is not well taken. Counsel was not obliged to stipulate. Moreover, the first newspaper article had theretofore been admitted over the plaintiff's objection.

3. The court received, over the plaintiff's objection, the original complaint in the action against this defendant and the Adriatic Mining Company. This complaint was not verified, nor was it signed by the plaintiff, and there was no evidence tending to show that he knew anything about the institution of an action against the mining company, or that he had any knowledge on the subject. The rule here is that such a pleading is not admissible under these circumstances. The reasons of the rule are so fully stated by Mr. Justice Mitchell in Vogel v. D. M. Osborne & Co. 32 Minn. 167, 20 N. W. 129, that further comment, so far as the rule is concerned, is unnecessary. It is true that the pleading there involved was an answer, but that in no wise differentiates the case on principle. Moreover, that case has been approved in this state and elsewhere. See 2 Notes on Minn. Cas. 590. See also 16 Cyc. 971.

Counsel seeks to avoid the force of the decision cited by claiming that the complaint was properly introduced for the purpose of impeachment. The difficulty with this theory is that the ground of Vogel v. D. M. Osborne, supra, is that a party is not held to have admitted anything by a former pleading where it had been withdrawn by amendment and knowledge of its contents is not brought home to him and he has in no way adopted it; and hence nothing in the complaint here involved can be charged to the plaintiff. See, also, Burns v. Maltby, 43 Minn. 161, 45 N. W. 3.

4. Numerous other assignments of error are made. What has been said determines several of them, and we consider further discussion unnecessary. In view, however, of the probability of a new trial of the action, we will say that we would be better satisfied with the instruction found in folio 518 of the paper book if the last two sentences had been omitted.

Order reversed.