Josias R. King *vs.* Mary McCarthy *et al.*

Argued May 25, 1892. Decided June 22, 1892.

**Evidence Showing a Loan of Money, not a Purchase of Land.**

Evidence *held* sufficient to justify the finding that a certain conveyance was a mortgage, and not a conditional sale.

Appeal by defendants, Mary McCarthy, John C. McCarthy, Richard W. Bell, Mary Bell, and James Bell, from an order of the District Court of Ramsey County, *Kerr*, J., made November 21, 1891, denying their motion for a new trial.

On April 21, 1884, one Jeremiah C. McCarthy was the owner of lots four, (4,) five, (5,) six, (6,) and seven, (7,) in Block one hundred and eighty-one, (181,) in Robertson's Addition to West St. Paul. He was owing considerable sums of money, and there were several judgments docketed against him. There was a mortgage on these lots, and it had been foreclosed, and the time for redemption was about to expire. He and wife on that day conveyed the property to the defendant Richard W. Bell, who redeemed from the foreclosure sale and paid the judgments, in all about $10,000. The property was then worth at least $22,000, and in 1887 it was valued at $50,000.

Jeremiah C. McCarthy died intestate September 11, 1885, leaving the defendant Mary McCarthy his widow. He also left two children, the defendants John C. McCarthy and Mary Bell, wife of defendant James Bell, who was a brother to Richard W. Bell. The widow was appointed administratrix of the estate. Debts of deceased to the amount of $3,500 were proved and allowed against the estate, but no property was found with which to pay them. Richard W. Bell on November 1, 1887, borrowed $14,000 of a trust company, and mortgaged the property as security for its payment. This sum was more than he advanced to pay off the incumbrances on the property when he got it. On November 5, 1887, Richard W. Bell conveyed the property, subject to the mortgage, by quitclaim deed to the widow and daughter, and they at the same time gave him their agreement to pay this mortgage, and to indemnify

him from all claims of creditors of Jeremiah C. McCarthy, deceased, and secured the performance of the agreement by their mortgage to him upon the property. On petition of a creditor of McCarthy, the widow was on February 26, 1889, removed, and this plaintiff, Josias R. King, soon after appointed administrator *de bonis non.*

On January 8, 1891, plaintiff commenced this action, alleging that the deed of April 21, 1884, to Richard W. Bell, was in fact given and taken as security for the advances he made to redeem the property and pay off the incumbrances, and with the secret understanding that he should hold it to hinder, delay, and defraud McCarthy's creditors; and alleging that the deed of November 5, 1887, to the widow and daughter of deceased, was taken in trust by them to convey an undivided third of the property in due time to the son, the defendant John C. McCarthy; that the trust company loaned its money and took its mortgage in good faith, without notice, and its security was valid. He further alleged that to pay the claims allowed against the estate it was necessary to sell a portion of said real estate; that the deeds created a cloud on the title and an obstruction to such sale, and he prayed judgment for the removal and for other equitable relief.

At the trial the court found for plaintiff and granted the relief asked. Defendants moved for a new trial, and being refused, appealed. The discussion here was largely upon the evidence, whether or not it sustained the findings of fact.

*Stevens, O'Brien & Glenn* and *John F. Fitzpatrick,* for appellants.

That an absolute deed may be proved by parol to be a mortgage, is undoubtedly true. That the court will lean very strongly toward declaring a transaction to be a mortgage, rather than a conditional sale, is also true. But there is such a thing as a conditional sale, and there is a difference between it and a mortgage, and the case at bar has all the elements of a conditional sale, and none of the peculiar elements of a mortgage. There are reciprocal duties as well as rights under a mortgage, and a test, easily applied in this case, is whether upon the state of facts to which Bell testifies, he could maintain an action against McCarthy for any of the money he paid to

secure the conveyance. We think he could not. If he could not, the essential elements of a mortgage, the creation of a debt, did not exist. *Buse* v. *Page*, 32 Minn. 111; 1 Jones, Mortg. §§ 265, 267, 269, 272.

*Willis & Nelson*, for respondent.

This money having been expended by Richard W. Bell for the benefit of the decedent and at his request, in clearing up his real estate for him, the grantee forthwith became invested with a right of action against McCarthy to recover the amount of such advances; his implied promise to repay such advances constituting a complete *indebitatus assumpsit.* It is of importance to inquire whether the consideration was adequate to induce a sale. Owners of property do not sell for a consideration manifestly inadequate, and therefore, great stress is justly laid upon the fact that what is alleged to have been the price, bore no proportion to the value of the thing sold. *Conway's Executors* v. *Alexander*, 7 Cranch, 218; *Morris* v. *Nixon's Executors*, 1 How. 118; *Vernon* v. *Bethell*, 2 Eden, 110; *Oldham* v. *Halley*, 2 J. J. Mar. 114; *Edrington* v. *Harper*, 3 J. J. Mar. 354; *Russell* v. *Southard*, 12 How. 139; *Niggeler* v. *Maurin*, 34 Minn. 118; 1 Jones, Mortg. § 279; *Pioneer Gold Min. Co.* v. *Baker*, 23 Fed. Rep. 258; *Fisk* v. *Stewart*, 24 Minn. 97.

Whenever a conveyance is originally intended between the parties as security for money, whether this intention appear from the instrument or in any other way, it is always considered in equity a mortgage. *Hill* v. *Edwards*, 11 Minn. 22, (Gil. 5;) *Meighen* v. *King*, 31 Minn. 115; *Jones* v. *Blake*, 33 Minn. 362. There is sufficient evidence that the relation of debtor and creditor was actually created, and of the amount of the debt, though no actual promise to pay it was made. In such a case an action of *assumpsit* will lie. *Tilson* v. *Warwick Gas Light Co.*, 4 B. & C. 968; *Yates* v. *Aston*, 4 Ad. & E. (N. S.) 182; *Burnett* v. *Lynch*, 5 B. & C. 589; *Elder* v. *Rouse*, 15 Wend. 218; *Madigan* v. *Mead*, 31 Minn. 94; *M'Dermid* v. *M'Gregor*, 21 Minn. 111; *Wilson* v. *Fairchild*, 45 Minn. 203.

MITCHELL, J. On the trial of this action the sole issue was whether a conveyance from plaintiff's intestate to the defendant

Richard W. Bell (the grantor of his codefendants, Mary McCarthy and Mary Bell) was a mortgage or a conditional sale, and the only question on this appeal is whether the finding of the court that it was the former, and not the latter, was justified by the evidence.

No conclusive test of universal application can be suggested to determine whether such transactions are mortgages or conditional sales. Each case must be decided in view of its own peculiar circumstances. The true test is, what was the intention of the parties? Did they intend security or sale? This is to be gathered from the surrounding facts and the situation of the parties, as well as from the written memorials of the transaction. And while it is undoubtedly true that, in order to convert what appears on the face of the written contract to be a sale into a mortgage the evidence should be clear that the real intention of the parties was to execute a mortgage, yet the inclination of the courts is to construe the contract to be a mortgage rather than a conditional sale, whenever the evidence will reasonably admit of it. We shall not attempt any extended discussion of the evidence.

Notwithstanding the testimony of Bell (which was the only direct evidence as to the negotiations between the parties at the time of the conveyance) that he refused to take a mortgage, and that the understanding was that it was a sale conditioned that McCarthy might buy the property back within one year upon paying what he (Bell) should advance to remove the incumbrances, yet an examination of the entire record satisfies us that the real intention and understanding of the parties was that Bell was to advance for McCarthy the money necessary to relieve the property of incumbrances, and take the deed as security; in other words, that Bell was to carry the property for the McCarthys, or, as Bell himself expressed it in one place, he was "to clear up the entire property *for them*." The subsequent conduct of the parties in the treatment of the property tends strongly to prove that the understanding of both parties was that the property still belonged to the McCarthys, and that Bell merely held the title to secure his advances. It is true that Bell took control of it so far as to collect most of the rents. But these were all needed, as he says, to pay taxes and assessments. It also ap-

pears that the McCarthys still continued to occupy part of the property as a residence, and it does not appear that they ever paid, or that Bell ever demanded, any rent from them. And finally, in 1887, nearly two years-after the alleged year's option to buy the property back had expired, Bell, after consultation with the widow of McCarthy and with her consent, executed a mortgage on the property, on which he realized enough to reimburse him for all he had advanced, and then, without receiving any consideration, quitclaimed the property to McCarthy's widow and daughter, taking back from them a bond, with security, to indemnify him against the mortgage which he had executed on the property, and against any claim of the creditors of the estate of Jeremiah C. McCarthy.

He testifies that he did this at the solicitation of his parents, for certain family considerations, his brother having married McCarthy's daughter; but men do not often, for such reasons, give away property worth $35,000. His conduct can be much more reasonably accounted for upon the theory that it was the understanding that he held the property merely as security for his advances, and, these having been reimbursed out of the proceeds of the mortgage, he had no further claim upon it, and therefore transferred it to McCarthy's family, to whom it rightfully belonged. It is true, as counsel claims, that the character of the transaction, whether a mortgage or a conditional sale, was fixed at its inception; but the subsequent conduct of the parties in such cases may throw a flood of light upon their original intention and understanding.

Another circumstance entitled to weight is the disproportion between the amount Bell was to advance to remove incumbrances and the value of the property. The amount of the incumbrances did not exceed $10,000, while Bell admits that at the time he obtained the deed from McCarthy the property was worth $22,000.

It is often laid down in the books that the existence of a debt is the test whether a transaction is a mortgage or a conditional sale, and much stress is laid by defendant's counsel upon the fact that there was no note or bond given by McCarthy as evidence of any debt to Bell, and that there was no covenant or any personal obligation to pay what Bell should advance to clear the property. This, if

true, would be a circumstance of no inconsiderable importance, but it is not complete or conclusive evidence that a transaction was a sale, and not a mortgage.

This court has twice held that, where the real nature of the transaction is a loan advanced upon the security of real estate conveyed to the party making the loan, it is none the less a mortgage because the advance is made wholly upon the security, and without any personal obligation on the part of the borrower. *Fisk* v. *Stewart*, 24 Minn. 97; *Niggeler* v. *Maurin*, 34 Minn. 118, (24 N. W. Rep. 369.) See, also, *Brown* v. *Dewey*, 1 Sandf. Ch. 56. But it is not necessary to go that far in order to sustain the finding in this case, for we are satisfied that the evidence would warrant the conclusion that the relation of debtor and creditor was actually created between McCarthy and Bell, and that there was an implied promise on part of the former to repay the latter as for money paid at his request and for his use.

Order affirmed.

(Opinion published 52 N. W. Rep. 648.)