IN RE APPLICATION TO REGISTER TITLE TO
REAL ESTATE.
ST. PAUL MERCURY INDEMNITY COMPANY v.
JOHN T. LYELL AND OTHERS.
HENRY E. HANSEN, APPELLANT.[1]

October 22, 1943.

No. 33,542.

[1]Reported in 11 N. W. (2d) 491.

*Christian G. Dosland,* for appellant.
*Gillette & Meagher,* for respondent.

THOMAS GALLAGHER, JUSTICE.

This is a proceeding by the St. Paul Mercury Indemnity Company, as applicant, to register title to certain real estate in Roseau county. Defendant Henry E. Hansen contested the company's right to register the title. The matter was tried by the court, which made findings and entered a decree adjudging applicant the owner in fee of said real estate, and that Hansen had no interest therein. From an order denying his motion for a new trial, Hansen appealed.

Prior to December 5, 1938, the real estate involved was owned by one John T. Lyell and used by him for the production of potatoes. Shortly prior to December 5, 1938, Lyell was indebted to the American State Bank of Moorhead in an amount exceeding $30,000. This indebtedness arose out of certain fraudulent transactions engaged in by Lyell in conspiracy with the cashier of the bank. Applicant as surety on the bond of the cashier was obligated to reimburse the bank for any losses arising out of these particular transactions.

For a time prior to December 5, 1938, the officers of the bank endeavored to work out some arrangement with Lyell for repayment of the amount due. Their plans terminated unsuccessfully, and on December 5, 1938, Lyell was called to a meeting of the directors of the bank. The bank at that time was represented by its attorney, James A. Garrity, and Lyell also was represented by counsel. At the conclusion of these negotiations on said date, Lyell admitted his fraud, and thereafter, according to the testimony of Mr. Garrity, the following conversation took place:

"Then I [Garrity] said, 'Jack, you know what we want from you?' and he said, 'No,' and I said, 'We want everything * * *,'"

then I told him we wanted bills of sale for the personal property and we wanted deeds for all of his real estate; * * *. I then drew the deeds and advised him, in the presence of these men, that it was necessary for his wife to sign * * * and we either went over to her house to get her or called her up and she came over and the deeds were executed and signed by Lyell and his wife * * *.

* * * * *

"* * * there was further conversation; I told Mr. Lyell * * * 'Now, I want it understood, Jack, that there are no promises of any kind made to you.' * * * and I said we were taking these deeds under no promises of any kind * * * and I said, 'Jack, at this time I want nothing to do with you except to take your deeds and take your bills of sale and clear you out.'"

With this 'in mind, Lyell and his wife thereupon executed the deeds. Lyell also executed a written release wherein he released and forever discharged the bank from any and all liability of every kind, nature, and description arising out of any and all transactions between him and the bank. Bills of sale to personal property owned by Lyell were executed and delivered to the bank at the same time. An additional deed to some of the premises herein involved was executed and delivered by Lyell and his wife on December 10, 1938, as part of the same transaction. The December 5 deeds were recorded on December 7, 1938, and the December 10 deed was recorded on December 20, 1938. The bank's agents immediately took possession of the premises involved.

On January 31, 1939, without the authorization or knowledge of the bank, Lyell executed and delivered to Hansen a warranty deed of the premises previously conveyed to the bank. At that time Hansen, a resident of California, who had had previous business transactions with Lyell, claimed an indebtedness due him from Lyell in an amount exceeding $19,000. In May 1940, likewise without the knowledge or consent of the bank, Lyell executed and delivered to Hansen three instruments purporting to be leases of the real estate in question.

On June 7, 1939, applicant, as required by its bond, reimbursed the bank for the net loss sustained by it as a result of the fraudulent transactions of its cashier in conspiracy with Lyell. Such payment amounted to $13,422.98 after the bank had sold all personal property assigned to it on December 5, 1938. Nothing was realized by the bank from the real estate. On June 12, 1939, in consideration of the payment of said amount by applicant, the bank by quitclaim deed conveyed all of said real estate to applicant in partial reimbursement for its loss. The value of the real estate at that time was far less than the amount paid by applicant on its bond.

Subsequently various negotiations were conducted between representatives of applicant and Hansen, wherein it was sought to work out some plan of reimbursement for them both. Hansen undertook to produce crops on the premises with the authorization of applicant, but due to crop failures nothing was realized from these ventures. During these negotiations and in connection with such transactions, at various times the officers or representatives of applicant referred to the original deeds as "collateral," or as "security," or by similar designations indicating they may have looked upon the property as security for Lyell's debt. It likewise appears that some of the officers of the bank later referred to the property as being held as "collateral" for the Lyell indebtedness. However, insofar as the record discloses, all such references were made long after the transaction of December 5, 1938. The bank was not a party to the subsequent negotiations between applicant and Hansen.

Subsequently applicant dropped all negotiations with Hansen and undertook these proceedings to register title so as to be in position to convey marketable title in the event a purchaser was found. Hansen appeared and denied that applicant had good title to the premises, alleging that the conveyances to the bank in December 1938 were given and held as security for Lyell's indebtedness to the bank, and that before applicant could acquire title foreclosure proceedings were necessary. Hansen alleged that his conveyances were likewise made by Lyell as security for the latter's

indebtedness to him, and conceded that his claim in the premises was inferior to that of applicant.

After a full and complete hearing on the matter, the trial court made findings and ordered payment, holding that the conveyances of December 1938 made to the American State Bank were not given as security, but conveyed title in fee simple to the bank; and that the bank in turn had conveyed the premises in fee simple to applicant, who was the owner thereof, and that Hansen had no interest whatsoever therein.

On appeal Hansen contends that the court below erred in making its findings as aforesaid. Forty-six assignments of error were made by Hansen, but in his brief he limits to four the issues to be determined in his appeal. They are as follows:

(1) That the findings of fact, conclusions of law, and order for judgment are not sustained by the evidence.

(2) That the court erred in receiving in evidence an affidavit of John T. Lyell relative to his intention in executing the deeds in December 1938.

(3) That the court erred in excluding certain exhibits offered by Hansen.

(4) That the court erred ·in receiving evidence as to the value of the premises.

■ The principle is well settled that the intent of the parties at the time of a conveyance determines whether such conveyance is absolute in fact as well as in form or whether it was given as security for an indebtedness. See 4 Dunnell, Dig. & Supp. § 6154, and cases cited. It is also well settled that the determination of such intent is for the triers of fact. Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 369; Nelson v. Helmbrecht, 155 Minn. 327, 193 N. W. 688. Accordingly, if the evidence here reasonably sustains the trial court's finding in this respect, under the well established rule governing this court on fact questions, we are bound to affirm. Here it appears that there is ample evidence to sustain such finding. The testimony of the bank's attorney, Mr. Garrity, as to the conversa-

tions between Lyell and the bank officers on December 5, 1938, would in itself sustain such finding. These conversations clearly indicated that it was understood by both parties to the transaction that the conveyances were absolute in fact and made without any promise by the bank to reconvey the premises to Lyell or to hold them as security for his debt. Many other circumstances indicate' that the conveyances were intended to be absolute. The release executed by Lyell at the same time; the excess of Lyell's indebtedness over the value of the land; the immediate surrender of possession to the bank; and the bank's subsequent conveyance of the premises to applicant without reservation or restrictions all tend to corroborate the testimony of Mr. Garrity and afford support for the court's findings in this respect.

It is true, as indicated, that some of the officers of the bank subsequently referred to the real estate taken by the bank as collateral on the indebtedness of Lyell and that other references were made thereto which might afford sufficient foundation for a finding that the conveyances were given as security. However, such references and designations, made long after the December 1938 transactions, would not in themselves be conclusive as to the nature of the transactions. The rule is well established that to prove an absolute deed a mortgage a mere preponderance of evidence is not sufficient. The proof must be clear and convincing. 4 Dunnell, Dig. & Supp. § 6157. Had the trial court found from such evidence that the conveyances were given as security, the evidence might be considered sufficient to sustain such a finding. However, that question is not before us, and, because there is evidence to sustain the findings made, we must affirm.

■ Hansen asserts that the court erred in admitting an affidavit by Lyell executed on January 23, 1942, wherein he stated that the deeds of December 1938 were not intended as security for his indebtedness but were absolute transfers. Lyell was a party to the action, and Hansen had alleged that he was still the owner in fee of the premises. Applicant contended that he was no longer interested therein. The court admitted the affidavit as an admission

by an interested party to the action. See 2 Dunnell, Dig. & Supp. § 3409. In view of applicant's position, there may be some doubt as to the propriety of this evidence. See *Id.* & Supp. § 3417, note 65, and cases cited. However, it is doubtful if any prejudice resulted by virtue thereof. The trial was by the court, and in view of the many conflicting statements of Lyell and his fraudulent actions and inconsistent positions, all of which were before the court, it is doubtful if the court placed any weight upon the affidavit in question. At most, it was cumulative in nature, and its admission, if error, was without prejudice insofar as Hansen is concerned. Salo v. Duluth & I. R. R. Co. 121 Minn. 78, 140 N. W. 188; Rennie v. Skellett Co. 151 Minn. 63, 186 N. W. 130.

■ Hansen contends that the court's refusal to admit in evidence certain exhibits offered by him constitutes reversible error. The exhibits which the court refused to admit related to transactions taking place a substantial period after the December 1938 conveyances. Some of them related to the lease made by Lyell to Hansen after he had previously conveyed the premises to the bank. Others related to transactions between applicant and Hansen long after said conveyances, and involved attempts by the parties to derive some income from the properties in question. They were not binding upon the American State Bank, the original grantee in the deed, nor could they alter or affect the clearly expressed intention of Lyell and the bank at the time the conveyances were made and accepted, as evidenced by Mr. Garrity's testimony. The exhibits in question have not been returned to this court, and a more complete description of them is not available. See Schall v. Northland Motor Car Co. 123 Minn. 214, 217, 143 N. W. 357, 358. However, as far as can be determined from the record here presented, it would appear that the trial court was justified in refusing their admission on the grounds that their remoteness from the December 1938 transactions and the fact that the bank was not bound thereby rendered them immaterial on the question of intention.

■ The court admitted opinion evidence as to the value of the

properties. Hansen contends that this constituted reversible error. The witness who testified with reference thereto had been engaged in the real estate business in the vicinity of the properties for some years. He had dealt in and appraised farm lands in the locality and made a trip to view the property in question in 1941. An examination of the record indicates a sufficient foundation to justify the court in receiving this evidence. The reception of opinion evidence as to value and the sufficiency of the foundation therefor are largely matters of discretion for the trial court. We see no abuse of discretion here in this respect. The principal issue presented for trial was whether the conveyances of December 5, 1938, were absolute or given as security. One test in determining this would be the adequacy or inadequacy of the consideration involved. The value of the land conveyed relates directly to this question, and evidence relative thereto falls directly within this issue. See 4 Dunnell, Dig. & Supp. § 6155. The trial court's findings indicate that the value of the land was insufficient to cover the loss of the bank or its surety. The expert's opinion as to value, when other encumbrances were deducted, did not vary greatly from the value placed thereon by Hansen. It is obvious that applicant will sustain a substantial loss in the transaction when and if the premises involved are sold. These considerations no doubt were of assistance to the court in determining the question of the intent of the parties. We hold that there was no error in the reception of this evidence.

Affirmed.

Mr. Justice Loring, absent because of accidental injuries, took no part in the consideration or decision of this case.