FRANCIS D. GAGNE v. HAROLD A. HOBAN.

159 N. W. (2d) 896.

June 28, 1968—No. 40,589.

476

*Warner, Ratelle, Hennessy, Vander Vort & Stasel,* for appellant.
*Wegner, Wegner & Amerman,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying defendant's motion for amended findings or for a new trial. The trial court found that in a transaction between the parties a deed and an option to purchase back certain real estate was an equitable mortgage rather than

a sale with an option to purchase, as contended by defendant. Defendant argues that the written instruments and all of the facts and circumstances surrounding the transaction require a finding that the parties intended a sale and purchase rather than a security transaction.

From the record it appears that, on July 31, 1957, plaintiff, Francis D. Gagne, was the owner of half a quarter section of land in rural Hennepin County, Minnesota. On that date a sheriff's certificate of sale, covering the property, was issued to the State Bank of Long Lake in a mortgage foreclosure proceeding. No redemption was made from this foreclosure proceeding and, on July 31, 1958, title vested in the bank. It appears that some time prior to the transaction with which we are concerned plaintiff's brother, Robert Gagne, had attempted to find some means which would give plaintiff a chance of keeping the farm and to that end had discussed the matter with defendant, Harold A. Hoban. Defendant became interested and, on August 29, 1958, went to the bank with plaintiff. Plaintiff introduced defendant to the bank's manager and informed him that defendant was going to pay his indebtedness to the bank. Accordingly, defendant paid $7,753.17, which included the amount bid in at the foreclosure sale, together with an additional sum of $680 which satisfied a personal note which plaintiff owed the bank for the purchase of farm equipment. At that time the bank delivered to defendant a quitclaim deed to the property, in which plaintiff was the grantee, and at the same time plaintiff delivered to defendant a warranty deed to the same premises. On or about the same date plaintiff and his brother, Robert Gagne, and defendant entered into an "Option Contract," under which, among other things, (a) defendant granted to the Gagnes an option to purchase the premises for $8,700 if purchased before February 28, 1959, or for $9,200 if purchased subsequently but on or before August 29, 1959, said option to expire on August 30, 1959; (b) the Gagnes were granted the exclusive use of the premises to and including August 29, 1959; and (c) Hoban was under no obligation to pay real estate taxes on the premises. No reference was made to any rental for the period of the option. The trial court found that the fair market value of the premises on August 29, 1958, was approximately between $11,000 and $12,000.

The option was not exercised on or before August 30, 1959. Plaintiff

continued to live on the premises until he was evicted in 1961. Pursuant to an agreement plaintiff paid to defendant the sum of $1,000 as rent for the premises for the period from April 1, 1960, to March 31, 1961. In April 1961 defendant brought unlawful detainer proceedings against plaintiff and, on May 2, 1961, took possession through a writ of restitution. It appears that Gagne paid the 1958 real estate taxes on the premises in 1959. Defendant has paid the real estate taxes due and payable in 1960 and thereafter. The court found, on the date of his order, April 5, 1966, that the value of the property, after improvements made by defendant, was $25,000. The findings recite:

"* * * [D]efendant made various improvements to the premises, including specifically, but without limiting the generality of the foregoing, the following: installation of plumbing, installation of a cement floor in the basement, rebricking of the outside of the house, improving the barn, tiling low areas of the ground, installing a septic tank and cesspool, building a garage, etc."

The trial court also found that defendant made "necessary repairs to the premises." The trial court found that the cost of the improvements, "made by defendant in good faith and with constructive knowledge by plaintiff," was $8,983.30. In addition, the court found that defendant "also devoted his own time in connection therewith, and the reasonable value of defendant's services is $5,000." The trial court found that after deducting taxes and insurance defendant received net earnings from the property of $4,161.85.

As conclusions of law, the trial court determined that the deed from plaintiff to defendant and the "option contract" created an equitable mortgage in favor of defendant. He concluded that the parties intended the warranty deed from plaintiff to defendant as security for plaintiff's indebtedness to defendant arising out of the advances made to the State Bank of Long Lake. The trial court's order declared plaintiff to be the owner in fee of the premises subject to a mortgage loan in favor of defendant. The order provided:

"Upon the payment of the following sums by plaintiff to defendant, defendant shall execute and deliver to plaintiff a warranty deed to the

premises involved herein and a satisfaction of defendant's equitable mortgage: $7,753 with interest thereon at the rate of six per cent per annum from and after August 29, 1958, plus $9,821.45."

It appears that the last figure takes into account defendant's expenses and the cost of his contributions to the premises made in good faith, less "net earnings" from the property.

■ Whether the transaction before us, which is cast in the form of a deed with option to purchase back, is what it purports to be or is in substance and reality a mortgage is ultimately a matter of the intention of the parties. The existence or nonexistence of such intention is a matter of fact to be determined by reference to the instruments employed by the parties and to all the facts and circumstances surrounding the transaction. United States v. Minnesota (D. Minn.) 113 F. Supp. 488; Citizens Bank of Morris v. Meyer, 149 Minn. 94, 182 N. W. 913; Nitkey v. Ward, 199 Minn. 334, 271 N. W. 873; Buse v. Page, 32 Minn. 111, 19 N. W. 736, 20 N. W. 95; King v. McCarthy, 50 Minn. 222, 52 N. W. 648; Westberg v. Wilson, 185 Minn. 307, 241 N. W. 315; Hewitt v. Baker, 222 Minn. 292, 24 N. W. (2d) 47; Land O' Lakes Dairy Co. v. County of Wadena, 229 Minn. 263, 39 N. W. (2d) 164, affirmed, 338 U. S. 897, 70 S. Ct. 251, 94 L. ed. 552; Lundeen v. Nyborg, 161 Minn. 391, 201 N. W. 623. Where the purpose and effect of the transaction is to give security on real property for a debt, the transaction is a mortgage and equity will give it that effect, and no agreement made at the time will obviate a foreclosure. Sanderson v. Engel, 182 Minn. 256, 234 N. W. 450.

■ Although the instruments do not express the existence of a loan from defendant to plaintiff, that fact is not controlling. Where all of the circumstances indicate the real nature of the transaction is that of a loan advanced on security of realty conveyed to the one making the loan, the transaction is nonetheless a mortgage even though the advance is made wholly on the security without any personal obligation on the part of the borrower. Hewitt v. Baker, *supra;* Lundeen v. Nyborg, *supra;* 12 Dunnell, Dig. (3 ed.) §§ 6188, 6189.

■ While the court might well have reached a different conclusion, it

seems to us that there is sufficient evidence in the record to indicate a mortgagor-mortgagee relationship rather than that of vendor and purchaser. Although plaintiff's time for redemption from the mortgage foreclosure sale had expired when the transaction was entered into, it is apparent that the bank intended that plaintiff should retain the property upon payment of his indebtedness. Rather than dispose of the property in a different manner, it chose to give plaintiff a quitclaim deed to the property so that he could then use it as security for further financing. The effect of the quitclaim deed from the bank, the warranty deed from plaintiff to defendant, and the accompanying option to purchase placed plaintiff in a position which gave him additional time to make a financial arrangement which would save his farm. The court could well find that plaintiff's situation with reference to his financial obligations remained the same except that he had additional time to work out his difficulties and that defendant stood in the shoes of the bank. This conclusion follows from the terms of the option contract which gave plaintiff the right to continue in use and occupancy of the property, together with the "right to plant and harvest crops" without payment of rent and with the accompanying obligation of paying taxes and special assessments. The trial court could well conclude that this arrangement was more consistent with the mortgagor-mortgagee relationship than with that of a landlord-tenant or vendor-purchaser relationship. While it is conceded that no expressed debt existed, that circumstance, while material in determining whether a deed was intended as a mortgage or as an absolute conveyance of land, is not controlling. Hewitt v. Baker, *supra;* Lundeen v. Nyborg, *supra.*

Moreover, the trial court could take into consideration the fact that the value of the property was greater than the consideration given for the deed, a circumstance which could well have influenced the court in determining that the debt was intended to operate as a mortgage. Holien v. Slee, 120 Minn. 261, 139 N. W. 493; Annotation, 89 A. L. R. (2d) 1040.

In the final analysis, the question of whether the parties to a conveyance really intended it to be absolute or security for indebtedness

is for the triers of fact. St. Paul Mercury Ind. Co. v. Lyell, 216 Minn. 7, 11 N. W. (2d) 491; Nitkey v. Ward, *supra.*

■ Defendant places some reliance on Citizens Bank of Morris v. Meyer, *supra,* which involved a warranty deed with an additional clause providing that the deed might be defeated by the grantor's payment of a specified sum to the grantee within one year. The court there held that the transaction was in fact a conveyance and not a mortgage. In that case, however, the grantor relinquished possession of the premises and paid no taxes, facts which materially distinguish that case from the one before us.

Affirmed.

OTIS, JUSTICE (dissenting).

There is not, in my opinion, any persuasive evidence in this record to support a finding that the following document was intended by the parties to be a mortgage and not an option as it is labeled:

### "OPTION CONTRACT

"For and in consideration of the sum of One Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned Harold A. Hoban hereby grants unto Francis D. Gagne and Robert L. Gagne, the option to purchase the following tract of land located in Hennepin County, Minnesota:

"East half of Southeast Quarter of Section 28, Township 119, Range 23, containing eighty acres more or less, subject to existing highway.

"The purchase price of the property, if this property be purchased under this option on or before February 28, 1959 is Eight Thousand Seven Hundred Dollars ($8,700.00) and if purchased subsequent to that date and on or before August 29, 1959, the price is Nine Thousand Two Hundred Dollars ($9,200.00). This option expires absolutely on August 30, 1959.

"If this option be exercised, conveyance shall be made by Quit Claim deed, with Harold A. Hoban warranting that no incumbrances or liens have been placed on the property by him.

"Further, Harold A. Hoban grants to Francis D. Gagne and Robert

L. Gagne the right to the exclusive use of the aforesaid property, from the date of this agreement to and including August 29, 1959, and whether this option be exercised or not. The exclusive use shall include the right to plant and harvest crops during this period of time. Francis D. Gagne and Robert L. Gagne agree to keep the property and the buildings thereon in good condition, ordinary wear and tear, and Acts of God and the public enemy excepted.

"Harold A. Hoban does not agree to pay any taxes or special assessments and agrees to convey title under this agreement, if the option be exercised, subject to all such taxes and special assessments being levied or falling due between the date of this instrument and the date of the deed, if any.

"Time is of the essence of this agreement.

"In witness whereof, the parties thereto have subscribed their names this 29th day of August, 1958."

There was no debtor-creditor relationship when defendant took title and gave plaintiff an option to buy. However, whether the instrument is an option or a mortgage, plaintiff has refused to comply with its terms beyond making a payment of $1,000 in the year 1960. I would deny equitable relief to one who has himself so utterly failed to do equity.