*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1331**

Taras Lendzyk,
Respondent,

vs.

Laura Lee Wrazidlo,
Appellant,

Mortgage Electronic Registration Systems, Inc.,
a Delaware corporation,
Defendant.

**Filed July 13, 2015
Affirmed
Peterson, Judge**

St. Louis County District Court
File No. 69DU-CV-12-1107

David L. Tilden, Hanft Fride, P.A., Duluth, Minnesota (for respondent)

Shawn B. Reed, Maki & Overom, Ltd., Duluth, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Stauber, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal challenging the district court's ruling that respondent has an interest in real property, appellant argues that the district court (1) misapplied caselaw

interpreting Minnesota anti-palimony statutes; and (2) erred in finding that, as a joint tenant, respondent is entitled to a one-half interest in the property. We affirm.

## FACTS

Respondent Taras Lendzyk and appellant Laura Lee Wrazidlo began dating in 2006. At that time, respondent owned a home on Blackman Avenue in Duluth, and appellant owned a home on Roosevelt Drive in Hermantown. In August 2007, appellant sold her home, and she and her two children moved into respondent's home.

After appellant moved into respondent's home, the parties decided to have a new home built in the Hermantown area. In the spring of 2008, appellant bought a lot on LaVaque Junction Road in Hermantown. Appellant used her money to buy the lot, title to the lot was recorded in her name, and she financed a construction loan for the home.

After construction was completed, the parties arranged to refinance the construction loan. The application for the new loan identified the parties as joint tenants, and both parties attended the closing on the new loan. At the closing, both parties signed a mortgage that identified them as joint tenants, and appellant signed a quitclaim deed that conveyed her interest in the property to herself and respondent as joint tenants.

The parties' relationship ended in 2010, and in 2012, respondent brought this partition action claiming a one-half interest in the property and requesting a judgment ordering that the property be sold and the proceeds divided between the parties. The case was tried to the court. Respondent testified as follows about the parties' decision to build a home together:

2

Q. So what – was there an agreement in terms of building a home?

A. Absolutely. In our discussions, [appellant] was receiving a large sum of equity from the sale of her home on Roosevelt Drive. And my debt-to-income level with my home on North Blackman Avenue was high. I wasn't going to receive, and I really didn't have a whole lot of money to put into the construction of the home or the purchase of the lot during the construction phase. It was our, you know, discussions that she was going to purchase the lot and spend, or purchase the majority of the – pay for the majority of almost all the construction costs during the building phase of the new home.

Once the new home was built, it was our agreement that I was going to take care of the re-financing cost and then pay for the mortgage. I was also to hold the insurance for the property as well.

Q. Was there any discussion as to who would pay for the initial purchase of the lot on which the home was built?

A. Yes, we had that discussion, and that was agreed upon between her and I that she was going to do that because she had the money coming from, you know, the sale of her home.

Q. Was there any discussion as to how the initial construction loan would be financed?

A. That was going to be financed through her as well because of the money from the sale of her home, and she had also received some funds through her parents' estate as well.

Q. Now, I believe you previously testified that you discussed Hermantown as a potential location for the new home. Did you both come to an agreement as to where you wanted to build your new home?

A. Yes. We looked at multiple lots in Hermantown. One of the lots that we looked at was in Maple Ridge, which I believe is off of LaVaque Road in Hermantown. We did discuss, we liked the lots there at Maple Ridge, and we actually, I made an offer to the owners, or the owner of the lots or the development on a lot there. We also looked at Sterling Ponds, and we also looked at Timber Trails. So we looked at multiple lots that we wanted to build on.

Q. . . . You've already discussed agreements in terms of location and financing. Did you and [appellant] ever discuss who would own the home once the house was built?

3

A. Yes, we did have that discussion. And our agreement that we were going to own that home together. We were building it together. We were starting a family together.

Q. Was that part of the discussion in terms of how the property would be financed?

A. Well, like I said, she was going to handle the financing of the construction because she had the funds to do so. Once the re-financing of the construction loan was complete, and my home at North Blackman Avenue sold approximately two or three days prior to closing our closing or re-financing of the construction loan on the new home. So it was after that point where I had the funds to put into our new home, paying for the re-financing and some of the things that I did to the home as well with the, you know, the driveway, the home entertainment system, so on and so forth.

Respondent paid $10,532 in closing costs, paid for and provided labor for improvements to the home, paid the monthly mortgage payments from November 2008 through September 2009, made partial mortgage payments from October 2009 through June 2010, and paid for property insurance from 2008 through 2010. Respondent's payments totaled $77,323. Appellant presented evidence that she contributed $201,171 toward purchasing the property and improvements to the home.

The district court concluded that Minnesota anti-palimony statutes did not bar respondent's claim to an interest in the LaVaque property and found that appellant and respondent, as joint tenants, were each entitled to a one-half interest in the property. The court ordered the property sold and the proceeds divided between the parties. This appeal followed.

4

## D E C I S I O N

*1.     Anti-palimony statutes*

Statutory interpretation presents a question of law, which we review de novo. *Halvorson v. Cnty. of Anoka,* 780 N.W.2d 385, 389 (Minn. App. 2010). But we review the district court's findings of fact under the clearly erroneous standard. *In re Pamela Andreas Stisser Grantor Trust*, 818 N.W.2d 495, 507 (Minn. 2012). In applying that standard, we view the evidence in the light most favorable to the district court's findings and defer to the district court's assessment of witness credibility. *Id.* A factual finding is clearly erroneous if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Hemmingsen v. Hemmingsen*, 767 N.W.2d 711, 716 (Minn. App. 2009) (quotation omitted), *review dismissed* (Minn. Feb. 1, 2010).

Minnesota's anti-palimony statutes restrict a cohabitant's ability to claim an interest in the property of another cohabitant. Minn. Stat. § 513.075 (2014) states:

> If sexual relations between the parties are contemplated, a contract between a man and a woman who are living together in this state out of wedlock . . . is enforceable as to terms concerning the property and financial relations of the parties only if:
> (1) the contract is written and signed by the parties, and
> (2) enforcement is sought after termination of the relationship.

Minn. Stat. § 513.076 (2014) states:

> Unless the individuals have executed a contract complying with the provisions of section 513.075, the courts of this state are without jurisdiction to hear and shall dismiss

5

as contrary to public policy any claim by an individual to the earnings or property of another individual if the claim is based on the fact that the individuals lived together in contemplation of sexual relations and out of wedlock within or without this state.

In *In re Estate of Eriksen,* the supreme court concluded that the anti-palimony statutes do not prohibit claims between cohabitants when a "claimant does not seek to assert any rights in the property of a cohabitant but to preserve and protect [his or] her own property, which [was] acquired for cash consideration wholly independent of any service contract related to cohabitation." 337 N.W.2d 671, 673-74 (Minn. 1983). The supreme court construed the anti-palimony statutes as applying "only where the *sole* consideration for a contract between cohabiting parties is their 'contemplation of sexual relations . . . out of wedlock.'" *Id.* at 674 (omission in original) (quoting Minn. Stat. § 513.076). The supreme court held that, even though the cohabitants had not signed an agreement detailing their financial arrangements regarding a home and the home was titled solely in one cohabitant's name, the probate court properly exercised jurisdiction over the other cohabitant's unjust-enrichment claim to a one-half interest in the home when each cohabitant equally contributed money to the expenses of purchasing and maintaining the home and to the purchase of a mortgage-protection life-insurance policy. *Id.* at 672, 674.

*In re Estate of Palmen* involved two cohabitants, Schneider and Palmen, who orally agreed to build a log cabin on property solely owned by Palmen. 588 N.W.2d 493, 495 (Minn. 1999). After Palmen's death, Schneider claimed an interest in the cabin, asserting that Palmen promised her that if their relationship ended, he would reimburse

6

her for her labor and financial contributions to the cabin's construction. *Id.* The district court concluded that it lacked jurisdiction over the case under the anti-palimony statutes, and this court affirmed, but the supreme court reversed. *Id.* at 495-97. The supreme court explained that the anti-palimony statutes do not bar "enforcement of all unwritten agreements between individuals living together in contemplation of sexual relations out of wedlock." *Id.* at 496.

> If the claimant can establish that his or her claim is based on an agreement supported by consideration independent of the couple's living together in contemplation of sexual relations out of wedlock or that he or she is seeking to protect his or her own property and is not seeking to assert any rights in the property of a cohabitant, the statutes do not operate to bar the claim.

*Id.* (quotations omitted).

Respondent presented evidence that he and appellant agreed that they would own the home together and that he paid the closing costs for refinancing the construction loan, contributed money and labor to improving the home, paid the monthly mortgage payments from November 2008 through September 2009, made partial mortgage payments through June 2010, and paid for property insurance from 2008 through 2010. Under *Eriksen* and *Palmen*, this evidence is sufficient to support the district court's finding that respondent's "claim is asserted to his own property interest and is not a claim based solely on the contemplation of sexual relations." Because respondent's claim was based on an agreement that was supported by consideration independent of any service contract related to cohabitation, sought to protect respondent's own property, and did not

7

assert any rights in appellant's property, the district court properly exercised jurisdiction over the claim.

2.      *Amount of respondent's interest*

Appellant's argument that respondent's interest in the property should be limited to the amount of his contributions toward it ignores the presumption that named grantees in a deed hold equal property interests. "Where two persons are named grantees in a deed, the presumption is that their interest in the land conveyed is equal. This presumption, however, is not conclusive, and the true interest of each may be shown." *Dorsey v. Dorsey*, 142 Minn. 279, 281, 171 N.W. 933, 934 (1919). Intent is determined by reference to the written documents "and to all the facts and circumstances surrounding the transaction." *Gagne v. Hoban*, 280 Minn. 475, 479, 159 N.W.2d 896, 899 (1968). Intent is a question of fact. *Id.* at 480-81, 159 N.W.2d at 900.

After noting that the fact that the parties were married was not relevant to its analysis, the *Dorsey* court stated:

> We find no evidence in the record tending to rebut the presumption that these parties are equal co-owners of the note and mortgage, aside from the fact that the greater portion of the purchase price of the farm was furnished by defendant. We think this fact alone is insufficient to overcome the presumption. Defendant may have been willing to give his wife an interest in the note and mortgage equal to his own. If it was agreed that her interest should be less than his, no proof of the agreement was offered; hence the [district] court would have been fully justified in regarding the note and mortgage as the property of the parties equally.

*Dorsey*, 142 Minn. at 281-82, 159 N.W. at 935.

Appellant testified at trial that respondent pressured her to put his name on the deed and mortgage, but the district court found that this testimony was not credible. The only other evidence that appellant presented to rebut the presumption of equal ownership was that appellant made greater contributions toward the property. Under *Dorsey*, this evidence, if accepted by the district court, was insufficient to overcome the presumption. Therefore, on this record, appellant has not shown that the district court erroneously ruled that appellant failed to rebut the presumption that respondent is entitled to a one-half interest in the property.

**Affirmed.**