*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1407**

Mark L. Kness,
Appellant,

vs.

Judith M. Paulson, n/k/a Judith M. Cady,
Respondent.

**Filed May 23, 2016
Affirmed as modified
Peterson, Judge**

Freeborn County District Court
File No. 24-CV-13-2077

Douglas J. Mentes, St. Paul, Minnesota (for appellant)

Thomas J. Kraus, Waseca, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this partition action, appellant argues that the district court erred in (1) dividing potential sale proceeds, (2) addressing respondent's home-equity line of credit (HELOC) claim because the claim was barred by the rules of civil procedure, and (3) making findings on the HELOC claim that are not supported by record evidence. We affirm as modified.

# FACTS

Appellant Mark K. Kness and respondent Judith M. Paulson n/k/a Judith M. Cady were in a relationship from 1995 until March 2013. They began living together in 1997. Initially, they lived in a house that Cady owned.

In 1999, the parties bought a house together at a price of $107,000. Cady paid $28,093.70 from the sale proceeds of her house for the down payment on the new house, and the parties obtained an $80,000 mortgage loan to pay the balance of the purchase price and closing costs. The parties had no written agreement about how the property would be paid for or how ownership would be divided between them. Both parties signed the mortgage deed and note, and they agreed to own the property as joint tenants with a right of survivorship.

The initial mortgage loan was a 30-year loan with a 7.625% interest rate and a monthly payment of $566.23. In 2003, the parties refinanced the loan to a 20-year term with a lower interest rate. The refinanced loan was for $82,553.63, and the monthly payment was $590.72. Kness made all of the payments on the initial loan and all of the payments on the refinanced loan through July 2013. In 2007, the parties obtained a HELOC in the amount of $16,900, of which $2,301.53 was used to pay delinquent property taxes and $871.17 was used to pay for appliances for the home. Cady testified that, when she signed the HELOC agreement, she believed that they were refinancing again and did not understand that they were borrowing additional money against the house.

The parties' relationship ended in early 2013, and, in September 2013, Kness began this partition action seeking a sale of the property and a division of the sale proceeds

between the parties according to their respective interests. The case was tried to the court. On March 6, 2015, the district court issued its findings of fact, conclusions of law, and order for judgment.

The district court found:

> [T]he parties had a mutual understanding that they would divide financial responsibilities after their purchase of the subject property as follows: (a) [Kness] would make the mortgage payments on the subject property and contribute his own skilled labor toward repairs and improvements to the subject property; (b) [Cady] and [Kness] would share in payments for real estate taxes and property insurance premiums; and (c) [Cady] would pay the rest of the household bills, including for natural gas, electricity, cable, water, sewer, groceries, and bills incurred for repairs or improvements to the subject property. [Cady] testified at trial that her monthly financial contributions to the household were greater than the mortgage payments made by [Kness], and that the reason for dividing the parties' responsibilities for household bills in this fashion was that she was better at bookkeeping and record keeping than [Kness]. [Kness] testified at trial that it was understood at the time of purchase that [Kness] would contribute his labor towards repairs and improvements on the subject property because he was knowledgeable and skilled in this area.

The district court found that the parties intended their division of responsibilities to approximate an equitable division and treated them as equal for purposes of resolving this case.

The district court made detailed findings about the parties' contributions toward improvements to the property during their cohabitation and about Cady's payments for improvements to the property after Kness moved out. In determining the parties' interests in sale proceeds, the district court credited Kness for his monetary payments toward

3

improvements. The district court also found that Kness spent $13,727.30 of the HELOC proceeds for his personal benefit and that Cady "was unaware of the nature of the HELOC at the time of its establishment and received no direct personal benefit from the funds." The court found that Kness made the mortgage payments through March 2013 and credited Cady with the mortgage-principal reduction that occurred after March 2013.

The district court found

> that the parties' interests in the property should be credited for the following contributions to the purchase or improvement of the subject property that fall outside of the parties' mutual understanding regarding the division of financial contributions during their cohabitation:

| [For Kness] | [For Cady] |
|---|---|
| $1,200.00 – Crew payment for driveway/garage | $28,093.70 – Down payment |
| ($13,727.30) – HELOC (less tax & appliances) | $6,362.95 – Mortgage principal reduction |
| $1,255.00 – Albert Lea Tree Services | $1,540.00 – June 2013 landscaping |
| | $9,000.00 – July 2013 reroofing |
| TOTAL: ($11,272.30) | $1,008.00 – August 2013 gutter replacement |
| | $1,712.98 – Early 2014 special assessment |
| | $98.73 – Bathroom fixture replacement |
| | $72.10 – Mailbox replacement |
| | $2,761.36 – Interior refurbishments |
| | |
| | TOTAL: $50,649.22 |

The district court found that the property's fair market value was $127,000. The mortgage balance was $46,936.37 and the HELOC balance was $16,500, resulting in potential sale proceeds of $63,564. After the district court credited Cady with the down payment and the amount of her payments toward improvements and deducted the amount of HELOC funds used by Kness for his personal benefit, $1,642.48 remained in potential

sale proceeds.  The district court divided that amount equally between the parties, which resulted in an award of $821.24 to Kness.

By order filed July 10, 2015, the court granted in part Kness's motion for amended findings and conclusions but denied his motion for a new trial.  The district court found:

> [Kness] made every monthly payment on the first and refinanced mortgages until July of 2013, despite moving out in March of 2013. . . .  The monthly mortgage payments alone for the refinanced mortgage total $75,021.44, reducing the principal of the loan from $85,000 to $52,199 or a decrease in principal of $32,801 (interest payments amount to $42,220.44).[1]

Although the district court found that Kness made the mortgage payments through July, rather than March, 2013, it did not reduce the mortgage-principal reduction credited to Cady.

This appeal followed the district court's order on Kness's posttrial motion.

## D E C I S I O N

## I.

"In Minnesota, an action for partition of real estate is statutory and the court is guided by the principles of equity in its decisions." *Anderson v. Anderson*, 560 N.W.2d 729, 730 (Minn. App. 1997).  An appellate court reviews "equitable determinations for abuse of discretion." *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 23 (Minn. 2011).  A district court abuses its discretion when its decision is based on an erroneous view of the law or it makes a decision against logic and the facts on record. *Id.* at 24.  This court will not set

---

[1] The order states that it is amending finding of fact no. 7, but it is finding of fact no. 20 in the March 6, 2015 order that addresses the mortgage payments made by Kness.

5

aside the district court's factual findings unless they are clearly erroneous. *County of Blue Earth v. Turtle*, 593 N.W.2d 258, 260 (Minn. App. 1999).

> When two or more persons are interested, as joint tenants or as tenants in common, in real property in which one or more of them have an estate of inheritance or for life or for years, an action may be brought by one or more of such persons against the others for a partition thereof according to the respective rights and interests of the parties interested therein, or for a sale of such property, or a part thereof, if it appears that a partition cannot be had without great prejudice to the owners.

Minn. Stat. § 558.01 (2014). Sale proceeds are applied to pay the general costs of the action, to pay the costs of the reference, and to satisfy liens, and the remainder is distributed among the owners "according to their respective shares." Minn. Stat. § 558.16 (2014). "A [district] court's decision regarding division of partition sale proceeds should not be reversed absent an abuse of its discretion." *Glenwood Inv. Props., LLC v. Carroll A. Britton Family Trust*, 765 N.W.2d 112, 117 (Minn. App. 2009) (quotation omitted).

"Where two persons are named grantees in a deed, the presumption is that their interest in the land conveyed is equal. This presumption, however, is not conclusive, and the true interest of each may be shown." *Dorsey v. Dorsey,* 142 Minn. 279, 281, 171 N.W. 933, 934 (1919). Intent is determined by reference to the written documents "and to all the facts and circumstances surrounding the transaction." *Gagne v. Hoban,* 280 Minn. 475, 479, 159 N.W.2d 896, 899 (1968). Intent is a question of fact. *Id.* at 480-81, 159 N.W.2d at 900.

Kness argues that there was no basis or explanation for the court to separate the down payment from all other contributions that the court found were part of the parties'

mutual understanding after the time of purchase. The record evidence supports the district court's finding that the parties had a mutual understanding that they would divide financial responsibilities after purchasing the house together and that they intended their contributions to these financial responsibilities to approximate an equitable division. The evidence regarding the parties' mutual understanding was sufficient to overcome the presumption of equal interests, and the district court did not err in enforcing the parties' agreement. Included in the parties' agreement was the understanding that Kness would contribute labor toward repairs and improvements and Cady would pay bills incurred for repairs and improvements. The district court, therefore, properly credited the parties for payments that each made for items that were outside of the parties' agreement.[2]

Kness argues that Cady should not have been credited for improvements that occurred after the parties' separation. But absent evidence that the parties intended their agreement to change or end upon separation, the district court did not err in applying the agreement to improvements made after separation. Kness also argues that Cady should have been credited with only 50% of the cost of improvements that occurred after the separation. Because the district court deducted the total cost of improvements from the total potential sale proceeds, the result is the same as if Kness's 50% share of the costs had been deducted from his share of the potential sale proceeds.

---

[2] In her appellate brief, Cady expressly contends that "the district court did not abuse its discretion in considering the parties' respective contributions and calculating the amount of contribution to apply to the parties['] respective shares."

The district court erred in calculating the amount of the mortgage-principal reduction credited to Cady. The amount was based on the finding in the March 6, 2015 order that Kness made the mortgage payments through March 2013, which reduced the principal balance to $53,567.72. But in the July 30, 2015 order, the district court found that Kness made the payments through July 2013, which reduced the principal balance to $52,199. Accordingly, we increase the balance remaining in the potential sale proceeds by $1,368.72 and award one-half of that amount to Kness, which increases his award from $821.24 to $1,505.60.

Kness argues that he made many payments over and above the monthly mortgage payments toward principal reduction and should be credited for the extra principal payments.[3] A handwritten ledger that Kness submitted shows payments greater than the amount of the monthly mortgage payments, but the amounts in the handwritten ledger do not correspond to the amounts shown in the printout of a bank record of mortgage payments. The district court, therefore, did not err in not crediting Kness for principal-reduction payments.[4]

_____

[3] Kness cites exhibits 1, 2, and 3, but there is no exhibit 2. The first three exhibits admitted at trial are numbered 1, 3, and 6, and we understand Kness to be referring to those exhibits, which are a printout of a bank record showing mortgage payments, copies of canceled checks, and a handwritten list of mortgage payments submitted by Kness.

[4] The bank record shows payments totaling $600.72 on July 10, 2003, $591 on November 15, 2010, $595 on May 4, 2011, and 20 payments of $600 between February 2011 and March 2013, which totals an extra principal reduction of $200.16. But the bank record does not indicate the source of the extra principal reduction payments, and the amounts do not correspond to Kness's canceled checks or handwritten ledger. This court, therefore, cannot conclude that the district court erred in failing to credit Kness with this amount.

8

## II.

"In pleading to a preceding pleading, a party shall set forth affirmatively . . . fraud, . . . and any other matter constituting an avoidance or affirmative defense." Minn. R. Civ. P. 8.03. "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Minn. R. Civ. P. 9.02. "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction that is the subject matter of the opposing party's claim." Minn. R. Civ. P. 13.01.

Kness argues that Cady's claim that Kness used over $13,000 of the HELOC for his personal benefit should not have been considered because Cady did not plead fraud. But Cady did not claim that Kness committed fraud, and she did not assert an affirmative defense or counterclaim. She testified that she understood the HELOC to be a type of refinancing and that she was unaware of Kness's use of the HELOC for his personal benefit. The evidence supports the district court's finding that Kness used $13,727.30 of the HELOC for his personal benefit.

**Affirmed as modified.**